No. 90,944

LEE BUILDERS, INC., *Appellee/Cross-appellant*, v. FARM BUREAU
MUTUAL INSURANCE COMPANY, *Appellant/Cross-appellee*.
(137 P.3d 486)

filed June 9, 2006.

*Paul Hasty, Jr.,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Patrick E. McGrath* and *Burke D. Robinson,* of the same firm, were with him on the briefs for appellant/cross-appellee.

*Jacob S. Graybill,* of Graybill & Hazlewood, L.L.C., of Wichita, argued the cause, and *N. Russell Hazlewood,* of the same firm, and *John Terry Moore,* of Moore Martin, L.C., of Wichita, were with him on the briefs for appellee/cross-appellant.

*Mark D. Hinderks,* of Stinson Morrison Hecker LLP, of Overland Park, was on the brief for *amicus curiae* National Association of Home Builders.

The opinion of the court was delivered by

NUSS, J.: This case concerns a dispute over insurance coverage between a general contractor, Lee Builders, Inc., (Lee) and its insurance carrier, Farm Bureau Mutual Insurance Company (Farm Bureau). Lee alleged that Farm Bureau breached a duty under the commercial general liability insurance (CGL) policy to defend or indemnify against a property damage claim brought by a homeowner. The district court granted judgment to Lee but denied certain attorney fees.

The Court of Appeals affirmed in part and reversed in part, holding that the CGL policy provided coverage for part of Lee's claims but remanding for further proceedings to determine the amount of the covered claim. It also vacated the award of pre-

judgment interest but affirmed the award of attorney fees. *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 33 Kan. App. 2d 504, 104 P.3d 997 (2005). Farm Bureau filed a petition for review on several issues; Lee filed no cross-petition for review. Our jurisdiction is pursuant to K.S.A. 60-2101(b).

Based upon Farm Bureau's petition, the issues on appeal and our accompanying holdings are as follows:

1. Did the district court and Court of Appeals err in determining that moisture leakage over time caused by defective materials or workmanship, which led to structural damage within a constructed home, was an "occurrence" under the CGL policy? No.

2. Did the district court err in awarding attorney fees pursuant to K.S.A. 40-908? No.

Accordingly, we affirm the Court of Appeals, including its remand to the district court to determine the amount of the covered claim.

## FACTS

As a general contractor, Lee completed construction of a home for Dr. Richard Steinberger in Wichita, Kansas, pursuant to a written contract. Subcontractors performed the work on the home. Lee initially turned the house over to Steinberger in December 1991.

Between 1991 and 1996, Steinberger notified Lee that windows were leaking. Lee attempted to locate the cause of the leaks with the assistance of the window manufacturer, Norco. Eventually, Lee concluded that the windows were defective, but the exact defect was not pinpointed. Lee alleged that after repeated attempts to resolve the leakage issue failed, Steinberger threatened a lawsuit in 1996.

Lee was insured during this time under a CGL policy issued by Farm Bureau. In September 1996, Lee notified Farm Bureau of Steinberger's complaints that the windows were leaking and the stucco exterior was cracking and leaking. Lee indicated that the windows were a "factory defect."

On October 16, 1996, Jack Hollowell, regional claims manager for the Wichita claims office of Farm Bureau, sent a letter to Lee disclaiming liability coverage "for any alleged liability arising out of

a situation concerning improper installation and/or defective windows which were installed by Lee Builders, Inc. or one of it's [*sic*] sub-contractors at the home owned by Dr. Richard Steinberger." In concluding that the CGL policy did not provide coverage for the claim, Hollowell stated: "It is our opinion that the situation giving rise to this claim does not meet the definition of 'property damage' or 'occurrence' as defined by the policy." Farm Bureau also disclaimed coverage based on several exclusions stated in the policy.

Following Farm Bureau's denial of coverage, Lee joined the window manufacturer, the window retailer, and the stucco installer in negotiating a settlement of Steinberger's claim at a total cost to Lee of $12,956.92. As part of the settlement, the Norco windows were removed and replaced with Andersen windows at the direction of Steinberger. The size of the Andersen windows differed from the Norco windows, requiring modification to Steinberger's house. While Lee paid for the cost of removing the Norco windows and installing the Andersen windows, Steinberger paid the difference between the cost of the windows.

In October 2001, Lee filed suit against Farm Bureau seeking to recover the full amount Lee paid to settle Steinberger's claim, $12,956.92, plus interest and attorney fees under K.S.A. 40-256, 40-908, or both. Lee alleged Farm Bureau breached its duty under the CGL policy to defend or indemnify Lee against Steinberger's property damage claim and that Farm Bureau's wrongful refusal caused Lee to mitigate its damages to prevent Steinberger from suing Lee.

Lee and Farm Bureau filed competing motions for summary judgment. Although the district court denied both motions, at the conclusion of the hearing it impliedly found that the damage was an "accident" because the damage was not anticipated or intended and expressly found the existence of an "occurrence":

"[T]here is no dispute that the windows leaked, even though the exact mechanism by which the windows leaked appears to be undetermined. The fact that the windows leaked was not anticipated nor intended by the insured in this case, Mr. Lee, I seriously doubt that was the case. I doubt Mr. Lee would put in a window that he expected or intended to leak. I find that the work [that] was completed

at the time in the house certainly qualifies as real estate or real property. Also going to find this constitutes an occurrence."

Although a jury trial was scheduled for April 15, 2003, Farm Bureau conceded that the amount Lee spent to resolve Steinberger's complaints ($12,956.92) was fair, reasonable, and in good faith. After argument, the district court determined that no material issues of fact remained and granted Lee's oral motion for judgment on the merits based on its previous determination that an occurrence resulted in damage. The court entered judgment in favor of Lee in the amount of $12,956.92, plus prejudgment interest and costs, and awarded Lee attorney fees and expenses of $77,101.15 pursuant to K.S.A. 40-908.

Farm Bureau appealed, and Lee cross-appealed the district court's refusal to award attorney fees under K.S.A. 40-256. The Court of Appeals affirmed the district court on all issues regarding Lee's coverage under the CGL policy; however, it reversed judgment for the entire amount of Steinberger's claim. The court remanded for a factual determination of the amount resulting from the occurrence, noting that prejudgment interest would not apply to the determination. The court also affirmed the district court's award of attorney fees; therefore, the cross-appeal was moot. *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 33 Kan. App. 2d at 518.

Farm Bureau petitioned this court for review. Lee did not file a cross-petition for review of any of the issues decided by the Court of Appeals. Accordingly, the issues of prejudgment interest and failure to award attorney fees under K.S.A. 40-256 are not before this court. See Supreme Court Rule 8.03(a)(5)(c) and (b)(1) (2005 Kan. Ct. R. Annot. 61); *Shirley v. Smith*, 261 Kan. 685, 696-97, 933 P.2d 651 (1997) (discussing party's failure to file a cross-petition for review).

## ANALYSIS

Issue 1: *Did the district court and Court of Appeals err in determining that moisture leakage over time caused by defective materials or workmanship, which led to structural damage within a constructed home, was an "occurrence" under the CGL policy?*

*Standard of Review*

In assessing whether Steinberger's underlying claims against Lee fall within the scope of coverage, this court must interpret the language contained in the CGL policy. The interpretation of an insurance contract is a question of law over which this court exercises unlimited review. *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 901, 89 P.3d 536 (2004).

*Analysis*

The CGL policy in the instant case, like most CGL's, contains several basic parts relating to insurance coverage. The first basic part concerns the initial grant of general coverage. The second basic part concerns various "exclusions" from the initial grant of coverage. The third basic part concerns "exceptions" to the exclusions, *i.e.*, under certain circumstances this part reinstates insurance coverage that had been excluded from the general grant. In the analogous case of *Am. Fam. Mut. Ins. Co. v. American Girl, Inc.*, 268 Wis. 2d 16, 32-33, 673 N.W.2d 65 (2004), the Wisconsin Supreme Court explained that its review of a CGL policy therefore could potentially follow three steps:

"[1] we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, [2] we next examine the various exclusions to see whether any of them preclude coverage of the present claim. . . . We analyze each exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, [3] we then look to see whether any exception to that exclusion reinstates coverage. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies. [Citation omitted.]"

In Farm Bureau's petition for review, it reduces its Court of Appeals arguments regarding coverage to the first step described in *American Girl*, *i.e.*, whether the claimed property damage constitutes an "occurrence" under the CGL policy so as to trigger the initial grant of coverage. Accordingly, we will consider only this first step. See Supreme Court Rule 8.03(a)(5)(c) and (b)(1).

For the purported initial grant of coverage, the CGL policy in the instant case provides in Section I, Coverage A, Bodily Injury and Property Damage Liability, in paragraph 1 that

"a. [Farm Bureau] will pay those sums that the insured [Lee] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result. . . .

. . . .

"b. This insurance applies to . . . 'property damage' only if:

"(1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
"(2) The . . . 'property damage' occurs during the policy period." (Emphasis added.)

The CGL policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Farm Bureau does not dispute that property damage occurred during the policy period.

The policy defines "occurrence" as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Accident" is not defined by the policy.

The parties conceded to the Court of Appeals that the question of whether the circumstances of this case constituted an "occurrence" under a CGL policy is one of first impression in Kansas. 33 Kan. App. 2d at 508. Both the parties cited to the Court of Appeals, and now to this court, numerous cases from various jurisdictions to support their respective positions. Lee urges that there was an occurrence citing, *inter alia, Iberia Parish School v. Sandifer & Son,* 721 So. 2d 1021 (La. App. 1998); *High Country Assocs. v. N.H. Ins. Co.,* 139 N.H. 39, 648 A.2d 474 (1994); *Kalchthaler v. Keller Const. Co.,* 224 Wis. 2d 387, 591 N.W.2d 169 (Wis. App. 1999). Farm Bureau just as vigorously declares there was no occurrence, citing, *inter alia, Amerisure, Inc. v. Wurster Const. Co., Inc.,* 818 N.E.2d 998 (Ind. App. 2004); *Bonded Concrete, Inc. v. Transcontinental Ins. Co.,* 12 A.D.3d 761, 784 N.Y.S.2d 212 (2004); *Auto-Owner Ins. Co. v. Home Pride Cos.,* 268 Neb. 528,

684 N.W.2d 571 (2004); and *L-J Inc. v. Bituminous Fire & Marine Ins. Co.*, 366 S.C. 117, 621 S.E.2d 33 (2005).

Many of these cited cases, and others, are discussed in numerous articles championing both sides of the controversy. Contrast Shapiro, *Point/Counterpoint: Inadvertent Construction Defects Are an "Occurrence" under CGL Policies*, 22 Construction Law. 13, 44 (Spring 2002) ("The better-reasoned decisions give effect to the actual intent of CGL insurance by holding that construction-defect claims allege an 'occurrence.' "), with Foster, *Point/Counterpoint: No Coverage Under the CGL Policy for Standard Construction Defect Claims*, 22 Construction Law. 18, 47 (Spring 2002) ("When the proper analysis is done—starting with the insuring agreement—the correct conclusion is reached. There is no coverage for standard construction defect claims for repair and replacement of defective work.").

Our obligation, however, is not to address all the arguments and other holdings from all the other jurisdictions or to analyze all the competing expert commentary on the subject. Rather, our task is to decide the question of "occurrence" in this case based upon Kansas law, to the extent possible. Toward that end, we are initially guided not only by the review of Kansas law performed by the Court of Appeals in this case, but also by the United States District Court for the District of Kansas in *Fidelity & Deposit of Maryland v. Hartford Cas.*, 189 F. Supp. 2d 1212 (D. Kan. 2002).

Chief Judge John Lungstrum examined the "occurrence" issue in *Fidelity*. There, a school district entered into an agreement with a general contractor to build a school and performing arts center. When the work was found to be defective, the school district sued the contractor and a wall subcontractor, among others, for breach of contract and negligence because of significant wall deterioration. The work was ultimately finished by Fidelity on a performance bond. After a settlement, the contractor and subcontractor assigned to Fidelity their claims against Hartford, the carrier for their CGL and umbrella liability policies. When Fidelity sought money from Hartford, among other things Hartford argued that there was no coverage because the deteriorating walls and other damage to the project did not constitute an "occurrence" as defined under

the policies. On cross-motion for summary judgment, Fidelity argued that Hartford had a duty to defend and indemnify the contractor and subcontractor in the underlying suits because the alleged damages fell within the CGL coverage and umbrella policies' liability coverage.

The *Fidelity* court acknowledged the two main schools of thought on whether structural defects or other damage caused by the insured contractor's negligent workmanship constitutes an "accident." It noted that one line of cases has held that faulty or improper construction does not constitute an accident; rather, the damage is the natural and ordinary consequence of the insured's act. The other line of cases has held that improper or faulty construction does constitute an accident as long as the resulting damage is an event that occurs without the insured's expectation or foresight. 189 F. Supp. 2d at 1216-17.

The *Fidelity* court began its analysis, however, with the policy language which stated that an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"—identical to the instant case. The court noted that "accident" is not defined in the policy, but looked to Kansas case law to conclude that the generally accepted meaning was " 'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.' " 189 F. Supp. 2d at 1216 (quoting *Harris v. Richards,* 254 Kan. 549, 867 P.2d 325 [1994], and discussing *Brumley v. Lee,* 265 Kan. 810, 963 P.2d 1224 [1998]).

In *Harris,* this court quoted *Gilliland v. Cement Co.,* 104 Kan. 771, 773, 180 Pac. 793 (1919), in discussing the definition of accident:

" 'The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.' [Citation omitted.]" 254 Kan. at 553.

Similarly, in *Brumley,* in construing a homeowner's policy, this court discussed the meaning of the term "accident." The policy

provided liability coverage for an "occurrence" that was defined somewhat similarly to the definition in the instant case: " 'an accident, including exposure to conditions which results, during the policy period, in bodily injury or property damage.' " 265 Kan. at 816. This court cited 13 Appleman, Insurance Law and Practice § 7486, p. 632 (1976), for guidance on the "accident" issue:

" 'The absence of any definition of the term "accident" in the policy merely means that an interpretation by law shall apply rather than an interpretation by contractual language. And where it is not defined in the policy, it must be interpreted in its usual, ordinary and popular sense. The word will, however, be accorded a liberal construction since it is ambiguous.' " 265 Kan. at 822.

As part of the *Fidelity* court's analysis, it also discussed *Spruill Motors, Inc., v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973). In *Spruill*, the insured, Spruill Motors, performed work on Vernon Rounkles' car. After a dispute over the bill, Rounkles drove the car home without paying for the repairs; in response, Spruill employees attempted to recover it. When Rounkles saw Spruill employees towing his car, he attempted to open the door; his foot was run over during the incident. Rounkles sued Spruill and won a $2,500 judgment, minus the cost of the repairs. Spruill then brought suit against its insurance carrier, Universal Underwriters Insurance Company, seeking reimbursement for the judgment and attorney fees incurred.

Spruill's policy with Universal Underwriters defined an occurrence as " 'an accident, including injurious exposure to conditions, which results . . . in injury or property damage neither expected nor intended from the standpoint of the insured.' " 212 Kan. at 684. Because Rounkles' petition only alleged intentional torts, Universal Underwriters denied coverage. This court, however, held that the policy did provide coverage for Spruill:

"Under this policy, coverage is avoided only when an act results in an intentional injury. An intentional act may result in unintended injury. . . . Since the undisputed facts disclose the personal injury to Rounkles was not the intended result of Spruill's acts, the policy of insurance covered Spruill for Rounkles' personal injuries." 212 Kan. at 687.

According to the *Fidelity* court, *Spruill* "illustrates that under Kansas law, the key to determining whether there is an 'occurrence'

appears to be whether the resulting damage, not the act performed that led to the damage, was intentionally caused by the insured." 189 F. Supp. 2d at 1218. The *Fidelity* court found it undisputed that its general contractor and subcontractor did not intend for the cracked school walls and structural damage to occur. Based upon this fact and the holdings of *Brumley, Harris,* and *Spruill,* the court concluded that "the Kansas Supreme Court would find that the damage that occurs as a result of faulty or negligent workmanship constitutes an 'occurrence' as long as the insured did not intend for the damage to occur." 189 F. Supp. 2d at 1218.

In the alternative, the *Fidelity* court held that "at the very least, that the term 'occurrence' is ambiguously defined in the policy, thereby requiring the court to construe the term in a manner favorable to the insured. Either way, there was an 'occurrence' here." 189 F. Supp. 2d at 1219. In a footnote, the court cited *Brumley* to explain that "[t]he term 'occurrence' could be construed as ambiguous because it is 'of doubtful or conflicting meaning.' [Citation omitted.]" 189 F. Supp. 2d at 1219 n.5.

The *Fidelity* holding was affirmed in *American States Ins. Co. v. Powers,* 262 F. Supp. 2d 1245, 1249 (D. Kan. 2003):

"[T]he court reiterates its conclusion in *Fidelity* that faulty or negligent workmanship can constitute an 'occurrence' so long as the insured did not intend for the damage to occur. Because there is no evidence or suggestion here that Mr. Powers intended any damage to occur, his workmanship constitutes an occurrence within the meaning of the policy."

In a footnote, the court again declared the term's ambiguity: "At the very least, the term 'occurrence' is ambiguous such that the court would construe the term in a manner favorable to Mr. Powers, the insured." 262 F. Supp. 2d at 1249 n.3.

The Court of Appeals in the instant case performed a similar review of Kansas case law. Like the *Fidelity* court, it reviewed *Brumley*. It noted that the *Brumley* court quoted treatise law for the general proposition that the term "accident" was inherently ambiguous and the policy should be liberally construed in favor of the insured. The Court of Appeals observed that although *Brumley* was not controlling, "*Brumley* instructs our analysis to the extent that the 'occurrence' definition may be ambiguous in its incorpo-

ration of the term 'accident' without further elaboration." 33 Kan. App. 2d at 509.

Also like *Fidelity,* the Court of Appeals acknowledged the two main schools of thought and their representative cases. It rejected Farm Bureau's cases as distinguishable. It also acknowledged Chief Judge Lungstrum's holdings in *Fidelity* and *Powers* that "clearly concluded that Kansas courts would adopt the rule that damage occurring as a result of faulty or negligent workmanship constitutes an occurrence as long as the insured did not intend for the damage to occur." 33 Kan. App. 2d at 510.

Not surprisingly, the Court of Appeals supported its conclusion—that property damage to surrounding structural components caused by moisture seepage resulting from faulty work constitutes an occurrence under the CGL policy—with several of the same reasons as *Fidelity.* First, citing *Spruill,* it held that an occurrence is avoided only when an act results in an intentional injury. Here, there was no intentional injury. Second, it held that to the extent the policy definition or the precise phrase construed is ambiguous, the policy is construed against the insurer. 33 Kan. App. 2d at 512 (citing *Lightner v. Centennial Life Ins. Co.,* 242 Kan. 29, 36, 744 P.2d 840 [1987]). Because the *Fidelity* facts did not include exposure to natural conditions, the Court of Appeals additionally relied upon the CGL policy definition of "accident" to include the "continuous or repeated exposure to substantially the same general harmful conditions."

Both *Fidelity* and the Court of Appeals also noted that an additional basis for their conclusion was the presence of CGL policy exclusions and exceptions, *i.e.,* those which can trigger steps two and three in the previously mentioned coverage analysis from *American Girl,* 268 Wis. 2d at 32-33. *Fidelity* observed that the CGL policy

"contain[s] detailed business risk policy exclusions. The business risk exclusions contemplate that some construction defects are covered and some are not. The policy exclusions become meaningless if all construction defects are excluded from coverage because they do not constitute an 'occurrence.' Because the parties included the business risk exclusions, they could not have intended to exclude all

construction defects, whether negligently or intentionally caused." *Fidelity*, 189 F. Supp. 2d at 1219.

The Court of Appeals advanced its rationale based on the subcontractor exception to the CGL policy's exclusion from coverage:

"[A] specific exception in Farm Bureau's policy to the 'your work' exclusion for subcontractor work is inconsistent with Farm Bureau's narrow interpretation of 'occurrence.' Although the policy expressly excludes coverage for 'your work' as defined, this exclusion 'does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.' [Lee] argues that if 'occurrence' is narrowly defined as urged by Farm Bureau, the subcontractor proviso would be rendered meaningless. We agree with [Lee] . . . ." 33 Kan. App. 2d at 511.

As suggested by these courts, the "Damage to Your Work" business risk exclusion in the CGL policy in the instant case supports the determination of an occurrence. The provision states that insurance coverage is excluded when: " 'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " The provision then establishes the subcontractor exception to coverage exclusion: "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." If there can be no occurrence, the exclusion—and its exception— appear to be superfluous.

Elaboration of this basic argument appeared in Shapiro, *The Good, the Bad, and the Ugly: New State Supreme Court Decisions Address Whether an Inadvertent Construction Defect is an "Occurrence" under CGL Policies*, 25 Construction Law 9, 12 (Summer 2005):

"A court need only ask *why* the CGL policy includes an exclusion for property damage to the insured's own work and that of its subcontractors to understand that it would be nonsensical for the policy to include such a provision if this kind of property damage could never be caused by an 'occurrence' in the first place. A court need only ask *why* the CGL policy specifically includes an express exception to the 'your work' exclusion for property damage arising out of the work of a subcontractor to understand that this kind of property damage must be included in the broad scope of the term 'occurrence' in the coverage grant, and that the coverage determination for this kind of property damage must be made based on the construction-specific policy exclusions." (Emphasis added.)

See also *American Girl*, 268 Wis. 2d at 43 ("If, as [CGL insurer] contends, losses actionable in contract are never CGL 'occurrences' for purposes of the initial coverage grant, then the business risk exclusions are entirely unnecessary . . . Why would the insurance industry exclude damage to the insured's own work or product if the damage could never be considered to have arisen from a covered 'occurrence' in the first place?").

This particular argument relied upon by *Fidelity* and our Court of Appeals is often relied upon in other decisions. Nevertheless, the rationale for a contrary view was recently provided by Justice Roggensack's dissent to *American Girl*. There, she argued that certain situations may prevent coverage at the occurrence level:

"The majority also asserts that if contract claims are never 'occurrences' then there is no need to have the business risk exclusion. [Citation omitted.] That argument ignores the fact that the policy at issue is a standard CGL policy. It is issued to many contractors to cover myriad circumstances that may be very dissimilar from the facts that form the basis for [the] claim [at issue]. Therefore, in a claim based on different facts, there may be an occurrence and yet the business risk exclusion may preclude coverage. For example, if a contractor builds a building and a wall spontaneously collapses on a passer-by because of poor workmanship in constructing the wall, there would be an occurrence in regard to the unforeseen falling of the wall, and the damage to the injured person would be covered. However, the repair of the defective wall would be excluded from coverage under the business risk exclusion." 268 Wis. 2d at 73-74 (Roggensack, J., dissenting).

In analyzing whether an occurrence exists, this dissent appears to draw a coverage line between certain tort and contract claims. As the *American Girl* majority notes, however, the plain language of the "occurrence" definition (identical to the definition in the instant case) does not distinguish between "tort" or "contract" claims. Rather, the definition is broad in scope:

"[T]here is nothing in the basic coverage language of the current CGL policy to support any definitive tort/contract line of demarcation for purposes of determining whether a loss is covered by the CGL's initial grant of coverage. 'Occurrence' is not defined by reference to the legal category of the claim. The term 'tort' does not appear in the CGL policy." 268 Wis. 2d at 77.

We agree. Moreover, placing such clear distinctions in the policy is the obligation of the policy drafter, the insurer Farm Bureau.

See *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 792, 457 P.2d 34 (1969) ("Where an insurer prepares its own contracts, it has a duty to make the meaning clear."); *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 55, 292 P.2d 711 (1956) ("[I]f the insurer intends to restrict its coverage it should use language clearly stating its purpose."). Additionally, when an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made. *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659-69, 810 P.2d 283 (1991); *Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 417, 449 P.2d 477 (1969).

In the alternative, assuming the policy language regarding "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," is ambiguous, we cannot declare the line of demarcation described by the *American Girl* dissent. This court has stated that "[u]nclear and obscure clauses in a policy of insurance should not be allowed to defeat the coverage reasonably to be expected by the insured." *Sturdy*, 203 Kan. at 792. An insured would reasonably expect to have insurance coverage under an "occurrence" not only for the damage caused to the passerby by the falling wall described in the dissent, but also for the damage to the falling wall itself. And any ambiguity must be construed against the insurer. As we stated in *Sturdy*, 203 Kan. at 792:

"Where an insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. If the terms of a policy of insurance are ambiguous or obscure or susceptible of more than one construction, the construction most favorable to the insured must prevail."

See also 2 Holmes' Appleman on Insurance 2d § 6.1, p. 173 (1996) ("Most American courts apply a rule of construction that coverage terms are construed broadly and exclusions and limitations of coverage are construed narrowly."). *Cf. Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 327, 961 P.2d 1213 (1998) ("Generally, exceptions, limitations, and exclusions to insurance policies require narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes the

duty to define any limitations on that coverage in clear and explicit terms.").

While Farm Bureau's position is accepted in some other jurisdictions, we agree with the holdings and rationales of the Court of Appeals and *Fidelity* discussed in this opinion. Farm Bureau generally disregards the CGL policy language where an occurrence is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" and specifically disregards the prior holdings of this court where "accidents" have been defined. The damage in the present case is an occurrence— an even more expansive coverage term than "accident"—because faulty materials and workmanship provided by Lee's subcontractors caused continuous exposure of the Steinberger home to moisture. The moisture in turn caused damage that was both unforseen and unintended. Because Farm Bureau only petitioned for review on the occurrence issue, further inquiry under the CGL policy regarding the possible applicability of exclusions and exceptions is unnecessary.

Issue 2: *Did the district court err in awarding attorney fees pursuant to K.S.A. 40-908?*

Farm Bureau also argues that the district court erred in awarding attorney fees pursuant to K.S.A. 40-908, and the Court of Appeals erred in affirming. Farm Bureau does not, however, challenge the amount of the attorney fee award. An issue not briefed is deemed waived or abandoned. *McGinley v. Bank of America, N.A.*, 279 Kan. 426, 444, 109 P.3d 1146 (2005).

*Standard of Review*

Whether the district court erred in imposing attorney fees under a particular statute is a question of law over which this court has unlimited review. See *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 878-82, 953 P.2d 1027 (1998).

"The fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. [Citation omitted.]" *State v. Denney*, 278 Kan. 643, 650, 101 P.3d 1257 (2004).

*Analysis*

K.S.A. 40-908 provides:

"[I]n all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on *any policy* given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs . . . ." (Emphasis added.)

In awarding attorney fees pursuant to the statute, the district court stated:

"In the case at hand, the plaintiff had one policy with multiple coverages: Commercial Property Coverage Part, Commercial General Liability Coverage Part and Commercial Inland Marine Coverage Part. The policy provides that 'fire', 'lightning', 'windstorm' or 'hail' are all 'Specified Causes of Loss'. There is no dispute that the property that is covered by the policy is property located in this State. Therefore, the Court finds that the Lee Builders policy in this case is an insurance policy to which K.S.A. 40-908 applies."

In affirming the district court, the Court of Appeals relied upon *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875. In *Hamilton*, the insured homeowner submitted a claim under a homeowner's policy for the collapse of a basement wall. State Farm denied coverage. Although a jury awarded the homeowner the cost of repairs because the loss was within coverage for damage caused by hidden decay, the district court denied the insured's motion for attorney fees because the *loss* was not caused by fire, tornado, lightning, or hail. On appeal, this court reversed and remanded for a determination of reasonable attorney fees, holding that K.S.A. 40-908 applied because the policy *covered* loss from fire, tornado, lightning, or hail. We stated:

"We conclude K.S.A. 40-908 is designed to provide for attorney fees for the homeowner upon successful suit under the policy absent a tender by the insurance company. Fees shall be allowed as a part of the costs under the statute where the homeowner obtains judgment for a covered loss under the homeowner's policy, which judgment is in excess of any amount tendered by the insurance company before commencement of the action. Application of the statute is not dependent upon the type of loss incurred. Rather, providing all conditions of the statute are met, costs, including reasonable attorney fees, are awarded where policy coverage for the loss incurred by the insured homeowner exists.

"The plain language of K.S.A. 40-908 supports such a conclusion. It provides application to any case in which a judgment is rendered on *any policy* given to insure any property against loss by fire, tornado, lightning, or hail. The policy coverage controls, not the actual type of loss. *If the loss is covered by a policy which insures against fire, tornado, lightning, or hail, then the statute applies regardless of whether the actual loss occurred by one of those named causes or some other cause covered by the same policy.*" (Emphasis added.) 263 Kan. at 882.

This conclusion is consistent with previous case law. In *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 689 P.2d 1187 (1984); the insurer filed a declaratory judgment action, and the insured filed a counterclaim. The district court entered judgment in favor of the insured, and the insurer appealed, arguing that K.S.A. 40-908 should be narrowly construed to benefit homeowners. In response, this court stated:

"[A]ppellant argues that the purpose of K.S.A. 40-908 is to benefit homeowners, and that the statute should not be extended to benefit commercial entities. . . . Again, there is nothing in the statutory language which suggests that it should be so limited. 'Plaintiff,' as used in the statute, includes corporate as well as non-corporate parties." 236 Kan. at 128.

Although Farm Bureau acknowledged in its brief that the policy, rather than the type of loss, dictates the applicability of K.S.A. 40-908, it argues that the Court of Appeals unreasonably extended the scope of the statute in affirming the district court's award. Farm Bureau asserts that the statute applies only to property insurance claims and thus, is inapplicable to the present liability claim.

In support, Farm Bureau cites *Ramsey v. Lee Builders, Inc.*, 32 Kan. App. 2d 1147, 95 P.3d 1033, *rev. denied* 278 Kan. 847 (2004). There, an insured builder filed a third-party action against multiple liability insurers to recover attorney fees and costs. A panel of the Court of Appeals held that Farm Bureau did not breach its duty to defend. The court stated that while it notes in passing that "K.S.A. 40-256 and K.S.A. 40-908 [were] inappropriate bases to sustain an award of attorney fees had Farm Bureau breached its duty to defend, [it] need not pursue those issues further in light of the conclusions already reached." 32 Kan. App. 2d at 1158. The court did not analyze the issue or provide support for its conclusion

in light of its ruling that Farm Bureau did not breach its duty. The quoted language is therefore dictum because it is unnecessary to the resolution of the *Ramsey* issue. Black's Law Dictionary 1102 (8th ed. 2004) (judicial comment that is unnecessary to the decision in the case). Farm Bureau provides no other support for its argument.

Based upon the plain language of K.S.A. 40-908, it applies where a judgment is rendered on *any* policy that insures against certain types of losses. *Hamilton*, 263 Kan. at 882. In the instant case, Lee, as plaintiff, recovered a judgment for indemnity against Farm Bureau. The judgment was based on an insurance policy that insured certain property against loss by fire, lightning, windstorm, and hail. Therefore, the district court did not err in awarding, and the Court of Appeals did not err in affirming, attorney fees pursuant to K.S.A. 40-908.

Lee has also timely moved this court, pursuant to K.S.A. 40-908, K.S.A. 40-256, and Supreme Court Rule 7.07(b) (2005 Kan. Ct. R. Annot. 56), for attorney fees and expenses incurred on appeal to this court in the amount of $18,856.96, with supporting affidavits. After consideration of all relevant factors and the affidavits of the parties, we conclude Lee should recover an additional sum of $12,000 for reasonable attorney fees on appeal to this court, to be taxed as costs. See *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 155, 673 P.2d 1200 (1984).

The judgment of the Court of Appeals is affirmed. The judgment of the district court is affirmed in part and reversed in part.

LOCKETT, J., Retired, assigned.