No. 121,842

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES T. KRAUSE and PATRICIA ANN VANLEAR,
*Appellants*,

v.

JAMES M. KERNS and CHRISTINE C. KERNS,
*Defendants*,

and

AMERICAN AUTOMOBILE INSURANCE COMPANY,
*Appellee*.

SYLLABUS BY THE COURT

1.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

2.

When there is no factual dispute, appellate courts review an order regarding summary judgment de novo.

3.

An accident, as required under an insurance policy's definition of occurrence, is an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and is often accompanied by a manifestation of force.

1

4.

A buyer closing on a home is not an occurrence under an insurance policy when an occurrence requires there to be an accident because closing on a home is designed, planned, and expected.

5.

An assumption of liability statement located in a seller's disclosure statement is not an occurrence because the assumption of liability was not an accident.

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed October 16, 2020. Affirmed.

*Douglas J. Patterson*, of Juris, LLC, of Leawood, for appellants.

*Matthew K. Holcomb* and *Scott R. Schillings*, of Hinkle Law Firm LLC, of Wichita, for appellee.

Before HILL, P.J., MALONE, J., and WALKER, S.J.

WALKER, J.:  Sometimes what appears to be the most routine home sale transaction can result in grave legal problems and seriously complicated litigation. In this case, James M. and Christine C. Kerns owned a residence covered by a homeowner's insurance policy issued by American Automobile Insurance Company (AAIC). The Kernses entered into a contract to sell their home to James T. Krause and Patricia Ann Vanlear (collectively Krause). As part of the sale, the Kernses provided a disclosure statement which indicated that there were no problems with several common areas of concern when buying a home. However, according to Krause the disclosure either misrepresented a number of issues or outright omitted problems with the home.

Krause sued the Kernses under a number of different theories. Krause and the Kernses settled the suit, and as part of the settlement the Kernses agreed to assign all of

their rights under their insurance policy to Krause. After Krause initiated garnishment proceedings against AAIC, the insurer moved for summary judgment arguing, in part, that coverage under the policy was not triggered because there was no "occurrence" which the policy required. The district court agreed and granted AAIC summary judgment. Krause timely appeals.

FACTS

In March 2016, the Kernses entered into a contract to sell their home to Krause. Several months before entering into the contract, the Kernses provided Krause with a "Seller's Disclosure and Condition of Property Addendum." The disclosure stated that "**SELLER understands that the law requires disclosure of any material defects, known to SELLER, in the Property to prospective Buyer(s) and that failure to do so may result in civil liability for damages.**"

Krause specifically points out that the Kernses disclosed that

"a. Defendants had owned the Property for sixteen (16) years.

"b. Swimming Pool and Equipment—Operating and Staying with the Property.

"c. Any water leakage or dampness in the house, crawl space or basement - No.

"d. Any problems with fireplace including, but not limited to firebox, chimney, chimney cap or gas line - No.

"e. Any repairs or other attempts to control the cause or effect of any problem described above - No.

"f. Any other environmental issues - No.

"g. Any other conditions that may materially affect the value - No.

"h. Any other condition, including but not limited to financial, that may prevent you from completing the sale of the Property - No.

"1. Disclose any material information and describe any significant repairs, improvements or alterations to the Property not fully revealed above - None.

"j. The undersigned SELLER represents, to the best of their knowledge, the

3

information set forth in the foregoing disclosure Statement is accurate and complete.

"k. Other provisions of the Disclosure."

According to Krause, after closing on the property they discovered multiple issues with the property that were not properly addressed in the disclosure. As examples, Krause alleged that the pool was in serious disrepair, the fireplace was unusable because of ventilation problems, there was a leak in the basement, and the lawn irrigation system was largely inoperable.

In late 2016, Krause sued the Kernses for property damage and other relief. The suit was dismissed without prejudice in October 2017. Krause filed a second suit against the Kernses in January 2018. The suit included eight claims, all of which related to the Kernses' misrepresentations or omissions in the disclosure.

The suit between Krause and the Kernses was settled. As part of the settlement, the Kernses agreed to stipulate to a final judgment in the amount of $79,482 in favor of Krause. The Kernses also agreed to assign "all of their rights, claims, and causes of action against AAIC and its agents, brokers, employees, officers and all other persons or entities relating to our arising" out of the Kernses insurance policy with AAIC. Additionally, Krause agreed to not take any action to collect from their judgment against the Kernses. Instead, Krause could only pursue collection of the judgment against AAIC.

Subsequently, Krause brought AAIC into the current suit through garnishment proceedings to recover the judgment amount. AAIC filed a motion for summary judgment arguing that the insurance policy did not cover misrepresentations made by the Kernses, and therefore, AAIC was not liable for any damages Krause suffered.

4

Krause filed a cross-motion for summary judgment arguing that the insurance policy covered the Kernses' misrepresentations and, thus, AAIC was obligated to satisfy Krause's claims against the Kernses.

The insurance policy referenced by the settlement agreement referred to the homeowner insurance policy the Kernses had through AAIC. Under the policy, AAIC agreed to insure "Property losses and **bodily injury**; **personal injury**; or **property damage** caused by an **occurrence**."

Essentially, Krause argued that an "occurrence," as defined by the insurance policy, included the "failure of [the Kernses] to remedy or otherwise correct the errors and omissions from disclosure made by [the Kernses] in the disclosure." Further, Krause asserted that "a damage 'occurrence' happened to Krause—when they closed on their acquisition of the Property at a time when [the Kernses] had previously assumed the obligation of representing the house accurately in the disclosure." Krause argued that "the damage to the Property was conveyed by [the Kernses] to Krause in an occurrence."

The district court granted AAIC's motion for summary judgment and denied the Krause's motion for summary judgment. The district court disagreed with Krause's arguments that there was an occurrence as defined by the insurance policy. The district court found that "[e]very cause of action in the underlying petition relate[d]" to the Kernses' disclosure and that the disclosure was not an occurrence.

The district court also noted that even if the disclosure and subsequent damages constituted an occurrence as defined by the policy, Krause still could not recover because of another exclusionary clause in the policy. Under the heading "LOSSES NOT COVERED—LIABILITY AND MEDICAL PAYMENTS TO OTHERS," the following exclusionary language appears:  "C. Personal Liability Coverage does not apply to:  . . . 7. Any claim or liability arising, in whole, or in part out of any written or oral statement

5

made, or which should have been made, by you or others on your behalf which is material to the sale of any property." The district court concluded that AAIC had no duty to indemnify the Kernses because the Kernses' statements and Krause's reliance on those statements clearly fell within the exclusion set out by Section C.7.

Krause timely appealed the district court's order.

ANALYSIS

On appeal, Krause argues the district court erred in granting AAIC's motion for summary judgment because the Kernses' misrepresentations and omissions in the disclosure constituted an occurrence under the insurance policy.

As an initial matter, Krause "agrees that there is a provision in the [AAIC] Policy which, in and of itself, would preclude any claim made against [AAIC] to satisfy a typical seller's disclosure claim from a person acquiring the property from its insured." Thus, Krause acknowledges Section C.7. of the insurance policy is exclusionary of the claims they make, but they argue that the case does not rely solely on the assumption that "[AAIC] is responsible to Krause based upon the indemnity policy insuring [the Kernses] relating only to a misrepresentation." But, as we explain below, we find this to be a strained interpretation which cannot successfully evade the blunt force of the policy provisions defining an occurrence.

The standards for a court considering summary judgment motions in Kansas are oft-repeated and are very clear:

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may

6

reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013).

Under the policy, AAIC agreed to insure the Kernses in the event of: "A. Property losses and **bodily injury**; **personal injury**; or **property damage** caused by an **occurrence**; or B. Loss assessment that is charged against you; during the policy period." As part of that coverage, if a claim or suit was brought against the Kernses, AAIC agreed to:

"1.  pay on behalf of the **insured** up to the limit of insurance shown on the Declarations for damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and,

"2.  settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury**, **personal injury** or **property damage** not covered under this policy."

But once again under the heading "LOSSES NOT COVERED—LIABILITY AND MEDICAL PAYMENTS TO OTHERS," in Section C.1. the following language appears:

7

"C.   Personal Liability Coverage does not apply to:

   1. Liability to others assumed by an **insured** under a contract or agreement unless that contract or agreement:

   a. directly relates to the ownership, maintenance or use of an **insured location**;

   b. is entered into by the **insured** prior to an **occurrence**; and

   c. is not covered elsewhere in this policy."

Krause argues that the exception to Section C.1. brings their claims within AAIC's policy because the Kernses assumed liability through the disclosure statement and each of the requirements after the "unless" in Section C.1. are present. As Krause explains it, the Kernses assumed liability through the disclosure statement in the housing contract and the housing contract and disclosure statement directly relate to the ownership, maintenance, or use of the Kernses' home—the insured location. Krause then argues that the housing contract was entered into by the Kernses prior to an occurrence—the occurrence being closing on the home after receiving the disclosure statement. And finally, Krause notes that the claim is not covered elsewhere in the policy.

In response, AAIC argues that Krause is fundamentally incorrect in their interpretation of Section C.1. According to AAIC, the language in Section C.1. relates to "agreements where the insured assumes the liability of another, such as a hold harmless or indemnity provision." AAIC cites two out-of-state cases—*Gibbs M. Smith, Inc. v. U.S. Fidelity*, 949 P.2d 337, 341 (Utah 1997), and *Olympic, Inc. v. Providence Wash. Ins. Co.*, 648 P.2d 1008, 1011 (Alaska 1982)—to support its point. As AAIC explains it, liabilities assumed by the insured in this context do "not involve liabilities incurred directly by the insureds themselves, but rather the *liabilities of others assumed by the insured*."

But we need not address this argument because, even if we assume that Krause is correct that Section C.1. arguably applies to situations like the one here, AAIC is still not liable because the exception in Section C.1. is simply irrelevant if there was no occurrence. This is so because the entire linchpin of this case, in our opinion, is whether

8

there was an occurrence, as defined in the policy, which would trigger coverage. If there was no occurrence, then there is no policy coverage and thus no need to look to any other policy provisions of inclusion or exclusion. Krause contends that the Kernses' faulty disclosure statement which they relied on at the closing of the contract constituted the occurrence requiring policy coverage. AAIC denies this. We believe resolution of the case is controlled by the answer to this question.

As defined by the policy:

"Occurrence means:

a. Under **Coverage For Damage to Your Property**:  accidental loss and damage to covered property which occurs during the policy period and is caused by one or more causes of loss we cover.

. . . .

b. Under **Coverage For Liability And Medical Payments To Others**:

(1)   An accident, including continuous or repeated exposure to the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**; or

(2)   An act or series of acts of the same or similar nature that occurs during the policy period and which results in **personal injury**."

Krause argues that Kansas courts have previously held that the terms "'occurrence'" and "'accident'" are ambiguous and "as such must be construed in a manner favorable to the insured." For support, Krause cites to *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 137 P.3d 486 (2006).

In *Lee Builders, Inc.*, the Kansas Supreme Court held that an occurrence existed where faulty materials and workmanship caused a home to be continuously exposed to moisture. 281 Kan. 844, Syl. ¶ 6. In that case, the homeowner sued Lee Builders, who was in charge of constructing the home, after the homeowner noticed that his windows

9

were leaking. Lee Builders' insurance company denied coverage for the issue, stating that the leaky windows did not meet the insurance policy's definition of property damage or occurrence.

The insurance policy in question defined an occurrence as "'[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" 281 Kan. at 850. The term accident was not defined by the policy. 281 Kan. at 850. In its opinion, the Kansas Supreme Court noted that the United States District Court of Kansas, when addressing a similar issue, held that "'the Kansas Supreme Court would find that the damage that occurs as a result of faulty or negligent workmanship constitutes an "occurrence" as long as the insured did not intend for the damage to occur.'" 281 Kan. at 854 (quoting *Fidelity & Deposit of Maryland v. Hartford Cas.*, 189 F. Supp. 2d 1212, 1218 [D. Kan. 2002]). The Kansas Supreme Court also cited approvingly to the court's conclusion in *Fidelity & Deposit of Maryland* that Kansas courts would hold that the "generally accepted meaning" of accident was "'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.'" *Lee Builders, Inc.*, 281 Kan. at 852 (quoting *Fidelity & Deposit of Maryland*, 189 F. Supp. 2d at 1216).

Ultimately, the Kansas Supreme Court held that the moisture damage was an occurrence under the policy "because faulty materials and workmanship provided by [Lee Builders'] subcontractors caused continuous exposure of the Steinberger home to moisture. The moisture in turn caused damage that was both unforeseen and unintended." 281 Kan. at 859. Moreover, the court noted that even if it assumed that the policy's definition of occurrence was ambiguous the result would be similar. The court reasoned that ambiguity in an insurance policy "'should not be allowed to defeat the coverage reasonably to be expected by the insured.'" 281 Kan. at 858.

10

But the situation in *Lee Builders, Inc.* is not similar to the situation in this case. While the term occurrence was defined similarly to AAIC's policy, the purported occurrence is of a totally different character. See 281 Kan. at 850. In *Lee Builders, Inc.*, the use of faulty materials and workmanship "caused continuous exposure of a home to moisture, which in turn caused damage that was both unforeseen and unintended." 281 Kan. 844, Syl. ¶ 6. The occurrence there was directly related to the construction and maintenance of the home.

Here, for AAIC to cover the Kernses' liability, there must have been an occurrence—defined as "[a]n accident, including continuous or repeated exposure to the same general harmful conditions, which results, during the policy period, in **bodily injury** or **property damage**." Like in *Lee Builders, Inc.*, the term accident is not defined. But the Kansas Supreme Court seemed to approve of the definition in *Fidelity & Deposit of Maryland*—"'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.'" *Lee Builders, Inc.*, 281 Kan. at 852 (quoting *Fidelity & Deposit of Maryland*, 189 F. Supp. 2d at 1216); see *Harris v. Richards*, 254 Kan. 549, 553, 867 P.2d 325 (1994) (defining accident in the same way).

Using that definition, there is no occurrence here which would require AAIC to indemnify the Kernses for Krause's suit against them. As Krause states in their brief, their argument relies on "obligations assumed by the insured . . . entered into by the insured prior to an occurrence (the occurrence being the Krause closing on the home after receiving the Disclosure statement which they relied upon)." But, in our opinion, the closing was not an occurrence as defined by the policy. Krause closing on the home was not "'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.'" *Lee Builders, Inc.*, 281 Kan. at 852 (quoting *Fidelity & Deposit of Maryland*, 189 F. Supp. 2d at 1216). On the contrary, Krause closing on the home was designed, planned, and expected.

11

Alternatively, Krause argues that the occurrence was the Kernses' failure to "remedy or otherwise correct the errors and omissions from disclosure made by [the Kernses] in the Disclosure and failure to maintain the property in the condition as disclosed by [the Kernses] in the Disclosure which had suffered continuous or repeated exposure to the same general harmful conditions." But again, this does not seem to be an undesigned, sudden, and unexpected event. The Kernses made their disclosure and provided incorrect information. Krause does not explain how this was an accident on the Kernses' part.

Krause cites to a recent Missouri case, *American Family Mutual Ins. Co. v. Sharon*, 596 S.W.3d 135 (Mo. Ct. App. 2020), to support their argument that the misrepresentation itself constitutes an occurrence under the insurance policy. In *Sharon*, the home seller misrepresented that there had not been any water damage or dampness in the house. However, shortly after buying the property, Sharon's new home experienced significant water leaks and water damage in the basement. Sharon sued the seller for negligent misrepresentation.

At the time of the sale, American Family provided homeowners insurance to the seller. The insurance policy was similar to the one in this case, requiring an occurrence and defining occurrence as "an accident, including exposure to conditions, which results during the policy period, in . . . property damage. Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one occurrence." 596 S.W.3d at 140. The district court declared that the insurance policy did not require American Family to defend or indemnify the seller.

On appeal, the appellate court, relying on earlier Missouri caselaw, held that a negligent misrepresentation can be an "accident" as required under the policy. 596 S.W.3d at 144. But the court's analysis did not end there. For the seller to be covered

12

under the policy, absent some exclusion, the accident must also result in property damage. 596 S.W.3d at 145.

The court went on to hold that Sharon could not "recover costs to repair defects that existed at the time of the sale because they are not damages to tangible property caused by the misrepresentation." 596 S.W.3d at 146. However, the court reasoned, Sharon's claim relied on the idea that the negligent misrepresentation "caused post-sale water damage because he would not have purchased the property but for the misrepresentations or he relied on the misrepresentations and as a result did not take corrective action that would have prevented said damage." 596 S.W.3d at 146.

*Sharon* is not binding precedent on this court. Nor is the case particularly instructive given the facts in this case. While Missouri courts have held that an accident, under homeowner insurance policies, can include a seller's negligent misrepresentations, that is not the situation in Kansas. Missouri courts do not seem to define an accident in the same way as Kansas courts. In Kansas, an accident in this context is "'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.'" See *Lee Builders, Inc.*, 281 Kan. at 852 (quoting *Fidelity & Deposit of Maryland*, 189 F. Supp. 2d at 1216). But even if we agreed with the Missouri court's interpretation and held that the Kernses' misrepresentations constituted an accident under the policy, the remaining facts here differ from those in *Sharon*.

In this case, Krause's claims do not rely on damage that was incurred after the negligent misrepresentations. In contrast to the damage to the property in *Sharon*, Krause's claims focus solely on property damage that occurred before the Kernses made their disclosures. The applicability of *Sharon* is limited in this case. But there is Kansas law which is instructive.

Holding that AAIC was not required to insure the Kernses for their misrepresentations or omissions is consistent with prior Kansas caselaw. In *Bush v. Beal*, 26 Kan. App. 2d 183, Syl. ¶ 2, 987 P.2d 1103 (1999), a panel of our court held that an insurance policy did not cover a seller's negligent misrepresentations because the damage to the property was not caused by the misrepresentations.

In *Bush*, plaintiff Bush purchased a residence with undisclosed termite damage from Beal. After obtaining a default judgment against Beal, Bush initiated garnishment proceedings against Beal's insurance company. The insurance policy in *Bush* provided that coverage would exist for property damage caused by an occurrence. Occurrence was defined as "'an accident, including exposure to conditions, which results in: . . . property damage.'" 26 Kan. App. 2d at 184. The insurance company argued that the termites, not Beal's negligent misrepresentations, caused any property damage.

Our court agreed, holding that there was "no coverage under the [insurance] policy because the damage to the conveyed property was not caused by the negligent misrepresentations of Beal. The damage was caused by termites." 26 Kan. App. 2d at 185.

A similar situation exists here. Occurrence has a similar definition in this case as it did in *Bush*. And, like in *Bush*, the damage here was not the result of the Kernses' misrepresentations or omissions. The damage was caused by some other factor or factors not related to the misrepresentations or omissions. See 26 Kan. App. 2d at 184-85.

Krause attempts to differentiate this case from *Bush* by arguing that the Kernses assumed liability through their disclosure statement and this constituted an occurrence. However, the assumption of liability present in the disclosure statement does not create an occurrence under the definition in the policy. The assumption of liability was not an accident.

14

Ultimately, we believe the district court did not err by granting AAIC's motion for summary judgment and holding there was no occurrence as defined by AAIC's policy. And the existence of such an occurrence is the necessary predicate for application of provisions allowing coverage under any other language of the policy.

Additionally, even if we would find the existence of an occurrence triggering coverage under the policy, we agree with the district court's final holding that the provisions of section C.7. are fatal to Krause's case. In language that seems particularly applicable to this case, C.7. excludes any "claim or liability arising, in whole, or in part out of any written or oral statement made, or which should have been made, by you or others on your behalf which is material to the sale of any property." Krause concedes that this language appears facially adverse to their claims, even as they try to craft a way around its provisions.

The upshot is that, even if we assume that Section C.1. would apply to situations where an insured assumes liability through an improper disclosure, Krause's argument that personal liability coverage applies under the exception in Section C.1. is not persuasive. Under Section C.1., liability assumed by the insured under a contract or agreement is not covered by the policy unless, in part, the contract is "entered into by the **insured** prior to an **occurrence**." Again, we believe none of the postdisclosure events qualify as occurrences under the language of AAIC's policy.

Finally, AAIC argues that even if Krause is correct in their arguments, AAIC would not cover the claims because other exclusions in the policy remove coverage. AAIC points to Section B.2. in the policy which states:

"2. We do not cover loss or damage caused directly or indirectly by any of the following. Such loss or damage is not covered regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

15

. . . .

 f. Fraudulent, dishonest or criminal acts by or at the direction of an **insured**."

AAIC also raises other similar provisions but does not delve into as much detail regarding them. Regardless, these arguments are immaterial in this case because the district court did not err when it granted summary judgment in favor of AAIC because there was no occurrence and therefore no coverage under the policy.

 Affirmed.