No. 99,793

BARTON J. COHEN, as Trustee of the BARTON J. COHEN REVOCABLE TRUST, and A. BARON CASS, III, as Trustee of the A. BARON CASS FAMILY TRUST, u/t/a dated March 22, 1989, as amended, *Appellants*, v. MARION BATTAGLIA, *Appellee*.

(293 P.3d 752)

Opinion filed February 8, 2013.

*R. Pete Smith*, of McDowell, Rice, Smith & Buchanan, P.C., of Kansas City, Missouri, argued the cause, and *Alleen Castellani VanBebber*, of the same firm, was with him on the briefs for appellants.

*E. Ann Wright*, of The Accurso Law Firm, of Kansas City, Missouri, argued the cause, and *Louis C. Accurso*, of the same firm, was with her on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.: The trial court dismissed the claims of two trustees alleging Marion Battaglia tortiously interfered with their existing contracts and prospective business relationships. A Court of Appeals panel affirmed the dismissal but on a different ground. We

granted review and now reverse because the panel inappropriately resolved factual issues on a dispositive motion. We therefore remand to the trial court for additional proceedings.

## FACTS

According to the trustees' amended petition, the salient facts are as follows:

Defendant Marion Battaglia owned a 20 percent interest in Baron Development Company, LLC (BDC), a Kansas limited liability company. He also owned 2,222 shares of common stock in The Baron Automotive Group, Inc. (BAG). The balance of the BDC membership interest and the BAG common stock shares were owned by A. Baron Cass and the Barton J. Cohen Revocable Trust.

On August 30, 2005, Battaglia sold his BDC stock to Cass and the Cohen Trust. Battaglia also contemporaneously sold his BDC membership interest to BDC via a "Redemption Transaction." Per its terms, BDC paid Battaglia $419,809 in cash and issued a promissory note for $1,259,434. Under a related "Pledge Agreement," the note was secured for Battaglia by a first-priority security interest in his 20 percent membership interest in BDC.

Per the "Pledge Agreement," the BDC promissory note to Battaglia became due and payable in full if either BDC or BAG were ever sold to an unrelated party. Per that agreement, BDC further promised not to sell any portion of Battaglia's security interest in membership with BDC without his consent. But his consent was no longer required once all of the obligations under the note were performed and the "[t]ermination date" of the agreement was reached.

After these transactions with Battaglia were completed, Cass transferred all of his interests in BDC and BAG to the A. Baron Cass Family Trust.

In October 2006, the Cohen and Cass trustees and BAG made an agreement with Group 1 Automotive, Inc. (Group 1). Per the agreement, (1) trustees would sell to Group 1 100 percent of the membership interests in BDC (including Battaglia's 20 percent se-

curity interest) and (2) BAG would sell to Group 1 all of its assets. The trustees believed Battaglia's consent was not required because the sale of the BDC interests would occur simultaneously with full payment of the promissory note to him.

Once Battaglia learned of the sale agreements, however, he insisted on knowing the purchase price and other details. The trustees refused the request because Battaglia was not a "seller" under the sale agreements, the transactions with Group 1 were confidential, and disclosure of such information might jeopardize the agreements. Battaglia responded by arguing that he was entitled to copies of the sale agreements because of his presidency of BAG and his security interest in BDC. Counsel for trustees and BAG countered that Battaglia was not entitled to see the documents because Battaglia was not a shareholder of BAG, a member of BDC, or a director of either. He therefore had no interest except as the holder of a promissory note.

Battaglia knew that the sales transaction was supposed to close on January 16, 2007. So 4 days earlier his attorney, Louis C. Accurso, filed a civil action in the circuit court of Jackson County, Missouri, naming Cohen, the Cohen Trust, Cass, BAG, and BDC as defendants (the Missouri action). Among other things, the suit alleged that the trustees breached their fiduciary duties to Battaglia by engaging in self-dealing and financially manipulating BAG and BDC in order to dilute Battaglia's ownership interest. That same day, Accurso faxed to Group 1's general counsel a copy of the Missouri action along with the following letter: "Please find enclosed a file-stamped copy of a lawsuit filed today on behalf of Marion Battaglia. If you have any questions or comments, please do not hesitate to contact me."

After receiving the letter and a copy of the Missouri action from Battaglia's attorney, Group 1 refused to close the transaction without altering the agreements to include a supplemental indemnification agreement from BDC, the Cohen Trust, and the Cass Trust. Group 1 also now required that $2,500,000 be placed in escrow

for its benefit. Their demands were met, with the trustees allegedly incurring substantial attorney fees as a result.

After closing, the Cohen and Cass trustees filed the instant lawsuit against Battaglia. They alleged claims for tortious interference with a contract, tortious interference with a business expectancy, and also requested specific performance of the "pledge agreement." Included in their claims was an allegation that Accurso's conduct in "[s]ending the letter and a copy of the petition for the Missouri action served no purpose except to interfere with the sale transactions."

The trial court dismissed the specific performance claim for lack of subject matter jurisdiction because the claim was so intertwined with those in Battaglia's Missouri action. That claim's dismissal was never appealed and is no longer in issue.

Battaglia filed a motion to dismiss the two remaining tortious interference claims under K.S.A. 60-212(b), which the trial court ultimately granted. The court's decision was based in part on § 773 of the Restatement (Second) of Torts (1979). The trustees appealed.

The Court of Appeals panel rejected the rationales of the district court. But the panel nevertheless affirmed the dismissal on a different ground, *i.e.*, § 772 of the Restatement (Second) of Torts (1979). See *Cohen v. Battaglia*, 41 Kan. App. 2d 386, 387-89, 202 P.3d 87 (2009). We granted the trustees' petition for review and obtain jurisdiction over their § 772 issue under K.S.A. 20-3018(b). But Battaglia did not file a cross-petition for review of the panel's rejection of the trial court's various rationales which had favored him.

## ANALYSIS

*Issue: At the time the instant suit was filed, the Court of Appeals was not in a position to decide the truth of the claims set out in the Missouri action.*

*Standard of Review*

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. *Campbell v. Husky Hogs*, 292 Kan. 225, 227, 255 P.3d 1

(2011). Additionally, when a district court has granted a motion to dismiss for failure to state a claim, an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom. The appellate court then decides whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. If so, the dismissal by the district court must be reversed. *Zimmerman v. Board of Wabaunsee County Comm'rs*, 293 Kan. 332, 356, 264 P.3d 989 (2011).

*Analysis*

In the trustees' amended petition, they allege that Battaglia committed tortious interference with a contract and tortious interference with a prospective business relationship by both filing the Missouri lawsuit and then later faxing to Group 1 a suit copy with an attached invitation to inquire. "While these torts tend to merge somewhat in the ordinary course, the former is aimed at preserving existing contracts and the latter at protecting future or potential contractual relations." *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986).

The elements of tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 423, 77 P.3d 130 (2003).

Similarly, the elements of tortious interference with a prospective business advantage or relationship are: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) a reasonable certainty that, except for the conduct of the defendant, plaintiff would have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) incurrence of damages by plaintiff as a direct or proximate result of defendant's misconduct. *Burcham*, 276 Kan. 393, Syl. ¶ 15.

In the trial court's order addressing Battaglia's motion to dismiss these particular claims, it rejected two of Battaglia's three arguments: (1) the trustees failed to show that there was a breach of contract, and (2) Battaglia did not have specific knowledge of the terms of the contract between Group 1 and the trustees. Despite prevailing on these arguments, the trustees asked the Court of Appeals to review them. The panel affirmed. *Cohen*, 41 Kan. App. 2d at 396. Because Battaglia filed no cross-petition asking us to review these panel holdings adverse to him, we do not consider them. See *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 848, 137 P.3d 486 (2006).

The trial court did adopt Battaglia's third argument—that a lawsuit simply cannot serve as the basis for a tortious interference claim. The court first embraced Battaglia's argument that the trustees' lawsuit was premature because the Missouri lawsuit had not yet terminated in their favor. The trustees asked the Court of Appeals to review this point, and the panel rejected the trial court rationale. *Cohen*, 41 Kan. App. 2d at 396. Because Battaglia filed no cross-petition asking us to review this particular panel holding adverse to him, we do not consider it. See *Lee Builders*, 281 Kan. at 848.

The trial court also relied upon Restatement (Second) of Torts § 773, to dismiss the amended petition. That section states:

"One who, *by asserting in good faith a legally protected interest of his own* or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." (Emphasis added.) Restatement (Second) of Torts § 773 (1979).

The court apparently concluded that by filing the Missouri lawsuit Battaglia merely was "asserting in good faith [his] legally protected interest"—his first priority security interest in BDC.

The trustees asked the Court of Appeals to review this point, and the panel rejected the trial court rationale. *Cohen*, 41 Kan. App. 2d at 396. Because Battaglia filed no cross-petition asking us

to review this particular panel holding adverse to him, we do not consider it. See *Lee Builders*, 281 Kan. at 848.

While generally rejecting the various rationales of the trial court, the panel did *sua sponte* conclude that a different section of Restatement (Second) of Torts § 772, applied. That section states:

"One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person

(a) *truthful information*, or

(b) honest advice within the scope of a request for the advice." (Emphasis added.) Restatement (Second) of Torts § 772.

After surveying Kansas law and concluding that § 772 should be adopted as the law in this state, the panel then held that § 772 compelled dismissal of the trustees' amended petition.

In the trustees' petition for review, they inform us of the single "[i]ssue decided by court of appeals of which review is sought." They specifically state:

"[p]laintiffs/appellants seek review of the Court of Appeals' determination that Restatement (Second) of Torts § 772(a) (1979) should be adopted as the law in Kansas and that its application requires dismissal of Count one and two of the amended petition."

We begin our review of this sole issue by recognizing that not all interference in "present or future contract relationships is tortious" because a "person may be privileged or justified to interfere with contractual relations in certain situations." *Turner v. Halliburton Co.*, 240 Kan. at 12.

To determine whether a party is justified in interfering, this court has looked at factors including the (1) nature of the interferer's conduct; (2) the character of the expectancy with which the conduct interfered; (3) the relationship between the various parties; (4) the interest sought to be advanced by the interferer; and (5) the social desirability of protecting the expectancy or the interferer's freedom of action. *Turner*, 240 Kan. at 13 (citing 45 Am. Jur. 2d, Interference § 27); see also Restatement (Second) of Torts § 767 (1979) (listing factors to consider in order to determine if the defendant's conduct was improper).

The panel held that the specifics of § 772 essentially trump consideration of the general "seven-factor balancing test found in §767." 41 Kan. App. 2d at 404. The panel specifically held:

"Here, Trustees have attempted to impose liability on Battaglia for Accurso's conduct in notifying Group 1 of the existence of the Missouri action. Applying § 772(a), we find Accurso's conduct on behalf of Battaglia *conveyed nothing but truthful information and, thus, is not actionable.* For this reason, we affirm the district court's decision to dismiss." (Emphasis added.) 41 Kan. App. 2d at 404.

The problem is the panel's conclusion that Accurso conveyed only "truthful information" was effectively a factual determination which is inappropriate on a dispositive motion. See *Seaboard Corporation v. Marsh Inc.*, 295 Kan. 384, 392, 284 P.3d 314 (2012) ("[F]actual disputes cannot be resolved in ruling on a motion to dismiss; instead, the well-pleaded facts of the petition must be read in the light most favorable to the plaintiff."); *Osterhaus v. Toth,* 291 Kan. 759, 785, 249 P.3d 888 (2011) ("On summary judgment, [Kansas appellate courts] generally do not resolve factual questions."); *Green Const. Co. v. Black & Veach Engineers & Architects,* No. 89-2291-0, 1990 WL 58780, at *5 (D. Kan. 1990) (denying summary judgment motion because "truthfulness" under § 772[a] is a jury question).

It is true that the Missouri lawsuit was indeed on file and Accurso conveyed a true fact when communicating only that point to Group 1. But Accurso did more: he sent a full copy of the petition to Group 1, and it contained mere allegations, *i.e.*, their truthfulness had yet to be proven.

Because this litigation was in its early stages when dismissed, we cannot ascertain the effect of this Accurso communication upon Group 1. *ARY Jewelers v. Krigel,* 277 Kan. 27, 38-39, 82 P.3d 460 (2003) ("[A] motion to dismiss typically is filed [early] in the case when many facts are undiscovered and the legal theories may be in flux."). But as the trustees suggest, it can be inferred that Group 1 refused to close with them not because of mere notice of a Missouri suit—but because of Battaglia's unsettling allegations within the suit, *e.g.*, the trustees breached "their fiduciary duties owed to Battaglia" in order to "dilute the value of [his] net ownership interest" in BAG and BDC. Among other allegations, the Missouri

petition states that the trustees financially manipulated the companies by "engag[ing] in self-dealing" and "siphon[ing] off profits" in order to avoid paying their business associate Battaglia his rightful compensation. And to use a more serious but analogous example, if Battaglia had filed a suit containing utterly false allegations about the trustees' criminal histories and their complete lack of business ethics, he could not successfully claim privilege to tortious interference by arguing that his mere communication about his suit's filing was true.

On a closely related point, we note the panel suggests that because truth is an absolute defense to defamation, truth should also be an absolute defense to tortious interference under § 772. *Cohen*, 41 Kan. App. 2d at 404 ("Under the law of defamation, no liability exists for true statements."). If we borrow, purely for purposes of argument, that suggested analog, we observe that the simple act of truthfully notifying another of one's lawsuit would be protected from a defamation claim—because the existence of the suit itself is true. But one's knowingly untrue allegations contained within the petition would not be protected from such a claim. Otherwise, false and damaging claims ironically could be made with impunity under the guise of a lawsuit—to the practical exclusion of other, risky forums and communication media. See *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 598, 738 P.2d 1246 (1987) (A communications company may be liable for defamation if it publishes "a matter that is both defamatory and false."); *cf.* K.S.A. 60-211(b) ("the signature of a person [on a pleading] constitutes a certificate . . . that . . . [3] the allegations and other factual contentions have evidentiary support." If pleading signed in violation of this section, court shall impose appropriate sanction.).

One final point bears mention. In the trustees' supplemental brief to this court, they ask us to reconsider some of the arguments that they presented to the Court of Appeals but did not raise in their petition for review. We generally do not consider issues that are not presented in the petition for review. *Rucker v. DeLay*, 295 Kan. 826, 289 P.3d 1166 (2012) (absent application of a permissive exception for plain error, this court will not consider any issues not presented in the petition for review or fairly included therein).

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed. The case is remanded.

JAMES A. PATTON, District Judge, assigned.