NOT DESIGNATED FOR PUBLICATION

No. 113,787

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KC RAVENS LLC,
*Appellant*,

v.

NIMA SCRAP, LLC, ERIC REEHL AND TODD DIAMOND,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; GERALD T. ELLIOTT, judge. Opinion filed April 22, 2016. Reversed and remanded.

*Tony Shapiro*, of Shapiro & McMullen, P.A., of Leawood, for appellant.

*Barry L. Pickens*, *Bryant T. Lamer*, and *J. Nick Badgerow*, of Spencer Fane LLP, of Kansas City, Missouri, for appellees.

Before HILL, P.J., MCANANY and ARNOLD-BURGER, JJ.

*Per Curiam*:  KC Ravens, LLC (KC Ravens) entered into a loan agreement with Nima Scrap, LLC (Nima). Repayment of the loan was guaranteed by two individuals associated with Nima, Eric Reehl and Todd Diamond (the guarantors). When Nima defaulted on the loan, KC Ravens brought suit against both Nima and the guarantors. The district court dismissed the suit, finding that the forum selection clause of the loan agreement deprived Kansas of jurisdiction over the case, that there was no other basis to assert personal jurisdiction over Nima, and that the guaranty agreement required that KC Ravens exhaust all efforts to collect from Nima before bringing suit against the

1

guarantors. KC Ravens now appeals. Because the forum selection clause clearly provided that an action could be filed in any state, we find the district court erred in dismissing the action against Nima. In addition, because we find that KC Ravens has properly stated a claim for relief against the guarantors, the district court prematurely dismissed the claims against them. Accordingly, we reverse the order of the district court dismissing all claims and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In July 2012, KC Ravens, a Kansas company, loaned $500,000 to Nima, a company operating in New York City, New York. To secure the loan, Nima granted KC Ravens a security interest in certain collateral. Nima also agreed to pay back the loan, pay monthly servicing fees, and to grant KC Ravens an interest in a Chilean scrap metal project. Nima executed a security agreement and a promissory note memorializing this transaction. Later, Nima executed an addendum to the note.

At about the same time, Reehl and Diamond each executed a guaranty agreement. As guarantors, both agreed to "guaranty[] the full and prompt payment of all of the liabilities of Nima" under the note and addendum.

About 18 months later, in January 2014, KC Ravens filed suit against Nima and the guarantors, alleging that Nima had defaulted on the loan and breached the note and security agreement. KC Ravens also claimed that the guarantors had breached the guaranties. As such, KC Ravens requested the district court enter judgment against all three defendants.

In response, the defendants moved to dismiss the lawsuit on several grounds. They alleged that the district court lacked personal jurisdiction over them because the "case has a mere toe-hold in Kansas." Second, the defendants argued that the forum selection

2

clause in the promissory note required that KC Ravens bring suit against Nima in the District of Columbia, not in Kansas. Third, the guarantors argued that under the guaranties, KC Ravens needed to obtain judgment against Nima before pursuing any claims against them. The defendants also argued that some of the claims raised in the petition were unavailable because the parties had entered into an express, rather than implied, contract. KC Ravens opposed the motion.

After hearing argument on the motion, the district court orally dismissed the lawsuit against both Nima and the guarantors. Concerning Nima, the judge determined that the note contained an ambiguous and contradictory forum selection clause that appeared to require KC Ravens bring suit in the District of Columbia while simultaneously allowing for suit in any other forum. Because of this inconsistency, the judge determined that the "first language"—requiring litigation in the District of Columbia—controlled. The judge therefore dismissed the case for "lack of jurisdiction, lack of personal jurisdiction." In dismissing the case against the guarantors, the judge determined that the guaranties required that KC Ravens exhaust "all attempts" to collect from Nima, including litigation, before pursuing judgment against the guarantors. Without indication that KC Ravens fully exhausted its efforts to collect against Nima, the suit against the guarantors could not continue.

The precise provisions of the loan documents relevant to this appeal will be discussed in more detail as needed.

THE SUIT AGAINST NIMA

On appeal, KC Ravens argues that the district court erred in dismissing the suit against Nima for two reasons. First, KC Ravens contends that the district court misconstrued the forum selection clause by limiting the appropriate forum to the District of Columbia. Second, KC Ravens claims that Nima's contacts with Kansas allowed the

3

Kansas courts to exercise personal jurisdiction over Nima. Because we find KC Ravens' first argument dispositive, we need not address the second.

*Forum selection in general*

In a forum selection clause, parties to a contract "choose the jurisdiction in which all actions or proceedings arising from their transaction shall be heard." *Vanier v. Ponsoldt*, 251 Kan. 88, Syl. ¶ 2, 833 P.2d 949 (1992). Although historically considered contrary to public policy, courts now regularly accept and enforce these clauses. See 251 Kan. at 99-101. As such, courts will enforce these clauses unless the party objecting to the clause "can clearly show enforcement would be unreasonable and unjust" or otherwise invalid. *Thompson v. Founders Group Int'l, Inc.*, 20 Kan. App. 2d 261, Syl. ¶ 3, 886 P.2d 904 (1994).

*Standard of review*

Forum selection clauses are provisions of written instruments, and construing the construction of written instrument is a question of law. 20 Kan. App. 2d 261, Syl. ¶ 1. As with other questions of law, our Kansas appellate courts exercise unlimited review over this issue. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). Similarly, the court also exercises unlimited review over the question of whether a written instrument is ambiguous. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). Ambiguity occurs when "the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Thompson*, 20 Kan. App. 2d 261, Syl. ¶ 2. However, the primary rule when interpreting a contract is to ascertain the parties' intent. If the terms of the contract are clear, this intent is to be determined from the contract language without applying any rules of construction. *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

4

Additionally, the interpretation of a single provision must not isolate that provision. Instead, the court must construe and consider the entire instrument from its four corners and, because the law favors reasonable interpretations, avoid results that would vitiate the purpose of the agreement's terms to the point of absurdity. *Waste Connections*, 296 Kan. at 963.

*The forum selection clause at issue here*

The forum selection clause at issue in this case appears in Section 8(d) of the promissory note. It reads:

> **"ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST BORROWER ARISING OUT OF OR RELATING TO THIS NOTE SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE DISTRICT OF COLUMBIA, AND BY EXECUTION AND DELIVERY OF THIS NOTE BORROWER ACCEPTS FOR ITSELF AND IN CONNECTION WITH ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE EXCLUSIVE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND IRREVOCABLY AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY IN CONNECTION WITH THIS NOTE**. . . . Nothing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Lender to bring proceedings against Borrower in the courts of any other jurisdiction."

Section 8(c), which immediately precedes this provision, provides that the note and the parties' rights and obligations under that note "**SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE DISTRICT OF COLUMBIA**."

Similarly, Section 23(a) of the security agreement provides that Nima "**CONSENTS TO SUBMIT ITSELF TO JURISDICTION AND VENUE IN THE**

**STATE AND FEDERAL COURTS LOCATED IN THE DISTRICT OF COLUMBIA IN CONNECTION WITH ANY DISPUTES WHICH MAY ARISE HEREUNDER**." But like with the note, the security agreement also states that nothing in Section 23(b) shall "affect the right of [KC Ravens] to bring any action or proceeding against [Nima] or its property in the courts of any other jurisdictions."

In dismissing the action, the district court determined that the conflict between the mandatory forum selection clause and the catch-all language concerning other jurisdictions created an ambiguity. But because KC Ravens drafted the note, the district court found that the ambiguity needed to be construed in Nima's favor and dismissed the action.

As a general principle, there are two types of forum selection clauses: mandatory and permissive. *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). A mandatory clause "contains clear language showing that jurisdiction is appropriate only in the designated forum." *Thompson*, 20 Kan. App. 2d at 269. A permissive clause, on the other hand, authorizes jurisdiction in one forum but lacks "an intent to prohibit litigation elsewhere." 20 Kan. App. at 269; see *Excell*, 106 F.3d at 321.

In a leading Tenth Circuit case on this issue, *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342 (10th Cir. 1992), the plaintiff filed suit in Johnson County, Kansas, and the defendant removed the case to federal court. When the defendant moved to transfer the case to another federal court, the plaintiff moved to remand the case to Kansas state court pursuant to a forum selection clause providing that "'venue shall be proper under this agreement in Johnson County, Kansas.'" 963 F.2d at 1346. The federal court remanded the case accordingly, and the defendant appealed.

In interpreting the clause, the Tenth Circuit determined that the language "seem[ed] reasonably clear" and "strongly point[ed] to the state court." 963 F.2d at 1346.

6

The court found the use of the word *shall* especially important, noting that it "generally indicates a mandatory intent unless a convincing argument to the contrary is made." 963 F.2d at 1346. Because it agreed with the lower court that the forum selection clause was mandatory, the Tenth Circuit affirmed the decision. 963 F.2d at 1346.

That said, it appears this court construes forum selection clauses a bit more stringently than the Tenth Circuit. In *Thompson*, the clause at issue provided that "'any action brought pursuant to this Agreement . . . shall properly lie in the Circuit Court of the Thirteenth Judicial Circuit of the United States District Court for the Middle District of Florida, Tampa Division.'" 20 Kan. App. 2d at 262. Finding this language mandatory, the Kansas district court dismissed the plaintiff's case. On appeal, the plaintiff argued that this language constituted a permissive rather than mandatory selection clause.

Although this court looked to *Milk 'N' More* to determine the legal effect of the clause at issue, it ultimately disapproved of the Tenth Circuit's holding. *Thompson*, 20 Kan. App. 2d at 270. The court explained that the *Milk 'N' More* forum selection clause "lack[ed] any clear language to the effect that jurisdiction is appropriate *only* in Johnson County, Kansas." (Emphasis added.) *Thompson*, 20 Kan. App. 2d at 271. While acknowledging that the use of the word *shall* "[o]bviously . . . indicate[d] a mandatory intent," the court reasoned that the broader context rendered the clause permissive. 20 Kan. App. 2d at 271. Instead of relying simply on the word *shall*, the court—informed by cases from other jurisdictions—looked to whether the wording of the forum selection clause also explicitly ruled out any other possible jurisdiction. 20 Kan. App. 2d at 270-71. This type of analysis, the court reasoned, favored the clause's plain meaning. 20 Kan. App. 2d at 271.

Applying this plain-reading framework to the Florida forum selection clause, the court determined that the clause was permissive and allowed the plaintiff to file suit in Kansas. 20 Kan. App. 2d at 271. The court also emphasized that this understanding of the

clause gave effect to the forum selection clause because it still secured the right to sue in the named forum. 20 Kan. App. 2d at 271.

Obviously, the clause in this case employs the word *shall*, reading: "**ALL JUDICIAL PROCEEDINGS BROUGHT AGAINST BORROWER ARISING OUT OF OR RELATING TO THIS NOTE *SHALL* BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE DISTRICT OF COLUMBIA**." (Emphasis added.) But like in *Thompson*, the plain language of this clause lacks any other strong indication that the federal court of District of Columbia is the only jurisdiction in which KC Ravens may file suit. For one, although the clause permits suit in "**ANY STATE . . . COURT OF COMPETENT JURISDICTION IN THE DISTRICT OF COLUMBIA**," there are in fact no state courts in the District of Columbia. Therefore, the clause could be read to mean that actions can be brought either in *any state court* or in a federal court in the District of Columbia—a reading that is consistent with the note's remaining provisions. As such, we find that the clause is permissive rather than mandatory.

Our conclusion is further bolstered by the final sentence of Section 8(d), which provides: "[n]othing herein shall affect the right to serve process in any other manner permitted by law or shall limit the right of Lender to bring proceedings against Borrower in the courts of any other jurisdiction." If the first sentence concerning the District of Columbia constituted a mandatory forum selection clause, it would render the final sentence of the section meaningless. When construing a written instrument, courts must avoid isolating single provisions or creating unreasonable or absurd interpretations. See *Waste Connections*, 296 Kan. at 963. To ignore the final sentence of the forum selection clause in favor of the first is an unreasonable interpretation, especially when construing the first sentence as a permissive forum selection clause gives effect to both.

8

This understanding of the forum selection clause also erases the ambiguity issue. By reading the first sentence as permissive and reconciling it with the last, there are no longer two or more possible readings. See *Thompson*, 20 Kan. App. 2d 261, Syl. ¶ 2. Instead, there is only one:  that jurisdiction is proper in the District of Columbia as well as other jurisdictions.

By incorporating a forum selection clause into an agreement, contracting parties waive any challenge to the exercise of personal jurisdiction in that forum based upon "the reach of the long-arm statute, or upon constitutional requirements of minimum contacts with the forum and fundamental fairness." K.S.A. 2015 Supp. 60-308; *Vanier*, 251 Kan. 88, Syl. ¶ 2. However, "[t]he forum selected by the parties must bear a reasonable relationship to the transaction." 251 Kan. 88, Syl. ¶ 2. In this case, because the forum actually selected is the home to one of the parties, it has a reasonable relationship to the transaction. Moreover, the contacts between Nima and Kansas are more than minimal. Nima solicited a bridge loan from KC Ravens. Although the initial negotiations occurred over the phone and at least partially in the state of Maryland, Nima knew KC Ravens to be a Kansas company. Entering into the loan created a connection with the state of Kansas through KC Ravens, and Nima's payments to a Kansas bank only reinforced this connection. And, more importantly, the loan agreement also created a continuing obligation to a Kansas company:  namely, the requirement that Nima repay the loan. As the District of Kansas noted in *Federal Deposit Ins. Corp. v. Culver*, 640 F. Supp. 725, 728 (D. Kan. 1986), a defendant who executes a note with a party in Kansas and later fails to repay the note should anticipate "'the possibility of being haled into court in Kansas.'"

Finally, to be valid, "the forum-selection clause in the contract must not have been entered into under fraud or duress." *Vanier*, 251 Kan. 88, Syl. ¶ 2. Nima makes no claim of fraud or duress.

9

Based on these principles, we find that the forum selection clause is permissive rather than mandatory, allowing for suit both in the District of Columbia and in any other jurisdiction. Because the forum actually selected is the home to one of the parties, there is a reasonable relationship between the forum and the transaction. And finally, because the forum selection clause was not the product of fraud or duress, the district court erred in dismissing the action against Nima.

THE SUIT AGAINST THE GUARANTORS

Next, KC Ravens contends that the district court erred in dismissing the suit against the guarantors. Specifically, KC Ravens insists that the language in the guaranties did not require it obtain a judgment against Nima before filing suit against the guarantors.

*Standard of review*

The district court dismissed the claim against the guarantors for failure to state a claim. Whether a district court erred by dismissing a case for this reason is a question of law subject to unlimited review. The appellate court must view the well-pleaded facts in the light most favorable to the plaintiff and assume as true those facts and the inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013). Factual disputes cannot be resolved or decided on a motion to dismiss. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008).

As explained in the previous section, the interpretation of written instruments like the guaranties is a question of law over which this court exercises unlimited review. *Prairie Land Elec. Co-op*, 299 Kan. at 366; *Thompson*, 20 Kan. App. 2d 261, Syl. ¶ 1. And as before, the important touchstones in interpreting these agreements include ascertaining the parties' intent and interpreting the instrument in a way as to avoid

10

isolating any one provision. See *Stechschulte*, 297 Kan. at 15; *Waste Connections of Kansas, Inc.*, 296 Kan. at 963.

*Guarantees in general*

As background, a guaranty is a contract in which one person promises to pay the debt of another after that person defaults or otherwise fails to pay. See *Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, Syl. ¶ 2, 519 P.2d 743 (1974). Generally speaking, a guaranty is either conditional or unconditional. *Kansas State Bank & Trust Co. v. DeLorean*, 7 Kan. App. 2d 246, 255, 640 P.2d 343, *rev. denied* 231 Kan. 800 (1982). In a conditional guaranty, the creditor must "proceed against the principal obligor before attempting to collect from the guarantor." 7 Kan. App. 2d at 255. An unconditional guaranty carries no such requirement. 7 Kan. App. 2d at 225.

*The guarantee clause at issue here*

The provision at issue here, which appears as Section 4 of each guaranty, provides:

> "Notwithstanding any other provision of this Guaranty, Lender agrees that it shall not attempt to collect from Guarantor until Lender and Borrower have used all efforts to liquidate the collateral for the Note and collect from Borrower under the Note including all efforts to exercise Lender's rights against the security for the Note."

In dismissing the case against the guarantors, the district court held that this *all efforts* language required that KC Ravens at least file suit and attempt to obtain judgment against Nima. The district court acknowledged that other provisions appeared to contradict Section 4 but determined that both the plain language of the section and certain rules of construction required enforcing Section 4.

11

KC Ravens contends that, when read as a whole, it is clear that the guaranties are unconditional and do not require that it obtain judgment against Nima before filing suit against the guarantors. But Nima counters that the language in Section 4 establishes express conditions precedent that KC Ravens failed to plead and prove. "A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract." *Wallerius v. Hare*, 194 Kan. 408, 412, 399 P.2d 543 (1965). Nima's condition precedent argument essentially contends that the guaranty is conditional.

As previously noted, Section 4 provides that, "[n]otwithstanding any other provision" of the guaranty agreement, KC Ravens will not attempt to collect from the guarantors until exhausting all efforts against Nima. But this language is contradicted by several other portions of the guaranty that appear in the contract both before and after it. For example, Section 2.A provides that the guarantors "absolutely, unconditionally and irrevocably . . . guarantee[] the full and prompt payment when due . . . of all of the Liabilities of Borrower." Section 5.B(ii) provides that the "obligations under this Guaranty are absolute and unconditional and shall not be discharged or otherwise affected as a result of . . . the absence of any attempt to collect the Guaranteed Obligations . . . from Borrower." Similarly, Section 6.A permits KC Ravens to proceed against the guarantors "without first proceeding against" either Nima or the collateral. And later, Section 6.D essentially mirrors this language, reading that "Lender shall not be under any obligation to make any demand upon or pursue or exhaust any of its rights or remedies against Borrower . . . in any particular order." In other words, Section 4 imposes a condition while four other provisions clearly state that the guaranty is unconditional.

Nima attempts to reconcile this clear conflict by highlighting the term *notwithstanding* in Section 4. This term *"*commonly means 'despite,' 'in spite of,' or 'although.'" Garner, Garner's Dictionary of Legal Usage 615 (3d ed. 2011). When used properly, *notwithstanding* sets off a provision or limitation that is subordinate to the main

12

section. Garner, Garner's Dictionary of Legal Usage 615. With this application of the term in mind, Section 4 reads:

> "[In spite of] any other provision of this Guaranty [which is subordinate to the following language], Lender agrees that it shall not attempt to collect from Guarantor until Lender and Borrower have used all efforts to liquidate the collateral for the Note and collect from Borrower under the Note including all efforts to exercise Lender's rights against the security for the Note."

When reading a contract, "the language of the contract is to receive a fair, reasonable, and practical construction." *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, Syl. ¶ 4, 961 P.2d 1213 (1998). By use of the term "notwithstanding" the parties are clearly recognizing that there are at least some conflicting provisions and that those are to be discounted in favor of the language of Section 4. The use of the term *notwithstanding* causes Section 4 to rise to a level of paramount importance.

So, there are clearly some conditions precedent with which KC Ravens must comply before collecting from the guarantors. It must use "all efforts to liquidate the collateral for the Note and collect from [Nima] under the Note including all efforts to exercise [KC Ravens'] rights against the security for the Note" before attempting to collect from the guarantors. Whether the language of Section 4 means that KC Ravens must actually file a lawsuit and get a final judgment against Nima before suing the guarantors is not quite as clear from the cited language and would require further fact-finding to clarify the intent of the parties. Liquidating collateral and exercising rights against the security for the note may be something less than filing suit.

Nevertheless, our pleading rules require that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or have been performed." K.S.A. 2015 Supp. 60-209(c). In the petition,

13

KC Ravens alleges that it has "performed all obligations, conditions, and covenants required of the Plaintiff under the Note and the Note Addendum." It further alleges that it has made demand for payment and that Nima has failed to pay or provide the collateral. The pleadings also allege that one guarantor has admitted personal liability.

As noted, under our standard of review, we must view the well-pleaded facts in the light most favorable to the plaintiff and assume as true those facts and the inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, dismissal is improper. See *Cohen*, 296 Kan. at 545-46. Factual disputes, such as the scope of the conditions precedent required under the guaranties, cannot be resolved or decided on a motion to dismiss. See *Rector*, 287 Kan. at 232. In other words, pleading requirements required only that KC Ravens state a claim for relief and not that it prove that its reading of the guaranties was the correct one. As previously noted by this court, "Kansas courts will not sustain a motion to dismiss unless it seems almost inconceivable that, under the pleadings, the plaintiff could produce evidence justifying some form of relief." *Pioneer Ridge Nursing Facility Operations v. Ermey*, 41 Kan. App. 2d 414, 422, 203 P.3d 4 (2009). Here, KC Ravens may be able to prove that the parties intended some of the unconditional language to control over Section 4 or that the conditional language does not require it to first obtain a judgment against Nima in order to proceed against the guarantors. And even if KC Ravens cannot provide that evidence, the need for that factfinding demonstrates that dismissal for failure to state a claim at this early stage was improper.

In sum, because of ambiguity in the guaranty agreements, the parties' intent is unclear, and more factfinding is needed to determine whether the agreements really bar KC Ravens' suit against the guarantors. As for right now, and viewing the facts in the light most favorable to KC Ravens, we find that a claim for relief exists. As such, the district court erred by prematurely dismissing the case.

14

Because we are remanding this case for further proceedings, we need not address the last issue raised by the appellant regarding the journal entry.

Reversed and remanded.