NOT DESIGNATED FOR PUBLICATION

No. 126,953

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AARON CIRCLE BEAR,
*Appellant*,

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/
KANSAS CITY, KANSAS, and STATE OF KANSAS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Submitted without oral argument. Opinion filed December 20, 2024. Affirmed.

*Alexander Edelman* and *Sarah C. Liesen*, of Edelman, Liesen & Myers, L.L.P., of Kansas City, Missouri, for appellant.

*Gregory P. Goheen*, of McAnany, VanCleave & Phillips, P.A., of Kansas City, for appellee State of Kansas.

*Daniel E. Kuhn*, senior counsel, legal department, for appellee Unified Government of Wyandotte County/Kansas City, Kansas.

Before ISHERWOOD, P.J., WARNER and COBLE, JJ.

PER CURIAM: Aaron Circle Bear filed a petition against the State of Kansas and the Unified Government of Wyandotte County/Kansas City, Kansas, alleging discrimination during his employment in the Wyandotte County District Attorney's Office. The district court dismissed the claims against both defendants, finding that Circle

Bear's claims against the State were filed outside the time frame permitted by Kansas and federal law and that the Unified Government was not Circle Bear's employer. He now appeals both rulings. After carefully reviewing the record and the parties' arguments, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On June 27, 2022, Circle Bear sued the Wyandotte County District Attorney's Office and the Unified Government of Wyandotte County and Kansas City, Kansas, bringing claims of race, sex, and religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., and the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 et seq. Circle Bear alleged that he was subject to unlawful discrimination for being a Native American who follows the religious practices of his ancestors and for being a gay man who does not conform to sex stereotypes from the time he began working in the District Attorney's Community Integrity Unit in January 2021 to the time he was fired four months later. Circle Bear's petition stated that he had filed charges of discrimination against both defendants with the Equal Employment Opportunity Commission (EEOC) and the Kansas Human Rights Commission (KHRC) on September 15, 2021. He received a letter from the United States Department of Justice authorizing him to file suit on March 29, 2022, and initiated this lawsuit exactly 90 days later.

Circle Bear was able to serve the Unified Government with the petition without incident. But his efforts to serve the District Attorney's Office met with difficulty.

Two days after filing his petition, Circle Bear attempted to serve the District Attorney's Office by giving a copy of the petition to an office employee. The office did not file an answer, and about two months later Circle Bear moved for a default judgment. On October 7, 2022—more than three months after Circle Bear filed his lawsuit—the

2

District Attorney's Office filed a response opposing Circle Bear's default-judgment motion. It argued that the district court should deny Circle Bear's motion and dismiss his claims against the District Attorney's Office because it was not an independent entity with the capacity to sue or be sued. Instead, the only way to sue the office was to sue the State of Kansas.

Circle Bear voluntarily withdrew his default-judgment motion, but he opposed the office's motion to dismiss. He argued that the office was not a state agency, but a legal entity that could be sued under Kansas law. And Circle Bear requested that if the court found that he should have sued the State instead, it should allow him to amend his petition to "properly name" the State as the defendant.

In the meantime, the Unified Government had also moved to dismiss Circle Bear's claims against it, arguing that it could not be considered his employer under either federal or state law. Circle Bear opposed this motion as well, arguing that the Unified Government could be considered his joint employer under a theory derived from the federal common law. He maintained that while several Kansas statutes appeared to show that employees in the District Attorney's Office were employees of the State, not the County, this did not preclude the application of the federal joint-employer theory.

After a hearing, the district court granted both defendants' motions to dismiss, but the court allowed Circle Bear to amend his petition in an effort to correct these errors.

Circle Bear filed an amended petition on December 23, 2022, naming as defendants the Unified Government and the State of Kansas, d/b/a Wyandotte County District Attorney's Office. Circle Bear's amended petition brought the same claims as those in his original petition, but he had added several factual allegations that detailed how the Unified Government interacted with the employees of the District Attorney's

Office. This amended petition was filed roughly nine months after Circle Bear received the right-to-sue letter.

The State and the Unified Government both moved to dismiss Circle Bear's claims. The State argued that Circle Bear had not exhausted his administrative remedies because the State had not been included on the charge to the EEOC and had not been involved in that process; the State also argued that Circle Bear's claims against it were time-barred because he had not commenced his suit within the time frame required by law. The Unified Government argued, as before, that it was not Circle Bear's employer.

After a hearing, the district court agreed with the defendants and dismissed Circle Bear's petition. The court found that Circle Bear had not exhausted his administrative remedies; the letters submitted to the EEOC and the KHRC had not included the State as a potential defendant, and Circle Bear had not asked for reconsideration of the KHRC's determination (which was necessary to bring a claim under KAAD). The court also found that Circle Bear had filed his Title VII claim against the State more than 90 days after he received the right-to-sue letter from the federal government. And the court again ruled that the Unified Government was not Circle Bear's joint employer under Title VII.

Circle Bear now appeals the district court's decision to dismiss his Title VII claims. He argues that his suit against the State was commenced within the time frame required by law and that he had exhausted his administrative remedies before bringing his claims against the State. He also asserts that the Unified Government could be considered his joint employer under federal law. Circle Bear does not challenge the dismissal of his KAAD claims. See *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017) (Issues not raised or only incidentally mentioned in briefs are deemed waived or abandoned.).

4

DISCUSSION

Title VII prohibits an employer from discriminating against its employees because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits retaliation against employees who oppose an unlawful employment practice or assert rights under this statute. 42 U.S.C. § 2000e-3(a). The district court found Circle Bear had not stated a valid Title VII claim against the State or the Unified Government and thus dismissed his petition under K.S.A. 60-212(b)(6).

K.S.A. 2023 Supp. 60-212(b)(6) allows a petition to be dismissed if it "fail[s] to state a claim upon which relief can be granted." Under this provision, a district court may dismiss a petition at the outset of litigation when the petition raises no legally cognizable claims. *Minjarez-Almeida v. Kansas Bd. of Regents*, 63 Kan. App. 2d 225, 232, 527 P.3d 931 (2023).

When a defendant requests dismissal under K.S.A. 60-212(b)(6), the district court "'must resolve every factual dispute in the plaintiff's favor.'" *Kudlacik v. Johnny's Shawnee, Inc.*, 309 Kan. 788, 790, 440 P.3d 576 (2019). The court must assume all the factual allegations in the petition, along with any reasonable inferences from those allegations, are true. The court then determines whether the plaintiff has stated a claim "based on [the] plaintiff's theory or any other possible theory." *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). Dismissal is only appropriate when the well-pleaded facts and inferences therefrom do not support any valid claim for relief. *Kudlacik*, 309 Kan. at 790.

Because the appropriateness of dismissal under K.S.A. 60-212(b)(6) is a legal question based solely on the petition, appellate courts give no deference to the district court's assessment of a defendant's dismissal motion. Instead, we apply these same standards on appeal—resolving factual disputes in the plaintiff's favor and affirming

5

dismissal only when the facts in the petition do not support any claims for relief. *Jayhawk Racing Properties v. City of Topeka*, 313 Kan. 149, 154, 484 P.3d 250 (2021).

After reviewing the parties' arguments and the record, we agree with the district court that Circle Bear has not brought cognizable Title VII claims against the State or the Unified Government.

1. *The district court did not err when it dismissed Circle Bear's claim against the State.*

We begin our analysis with the district court's dismissal of the claims against the State. The district court found that Circle Bear had not initiated his claims against the State within the window of time required by federal law and had not exhausted his remedies since he had not named the State in his original letter to the EEOC or provided the State notice of that claim. We find the court's first conclusion—that Circle Bear's claims were time-barred—dispositive and thus need not reach the court's conclusion on exhaustion.

Title VII requires a person who believes their employer has engaged in unlawful discrimination or retaliation to first file a charge of discrimination with the EEOC to allow the agency the opportunity to determine whether it would pursue a claim against the employer. If the federal government does not pursue a further investigation, the Department of Justice sends the complainant what is commonly known as a "right-to-sue letter," which authorizes the person to bring a civil lawsuit against the named employer in court. *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 487, 135 S. Ct. 1645, 191 L. Ed. 2d 607 (2015); see 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). Once a complainant receives a right-to-sue letter, they must file a lawsuit against the named employer within 90 days. 42 U.S.C. § 2000e-5(f)(1).

6

In Kansas, a lawsuit commences against a defendant at the time a petition is filed if that defendant is served that petition within 90 days of the filing date. If service is obtained outside this 90-day window, the lawsuit commences at the time of service. K.S.A. 2023 Supp. 60-203(a). When a person files a claim against the State, they must serve the lawsuit on the attorney general or an assistant attorney general. K.S.A. 2023 Supp. 60-304(d)(5).

Circle Bear filed his original lawsuit naming the Unified Government and the Wyandotte County District Attorney's Office on June 27, 2022—the 90th day after he received his right-to-sue letter. But Circle Bear's attempted service of his original lawsuit on an employee of the District Attorney's Office in June 2022 was invalid under K.S.A. 60-304(d)(5). Circle Bear did not file his amended petition, naming the State as a defendant, until almost six months later on December 23, 2022. Thus, even if one could read Circle Bear's original charge to the EEOC as providing notice to the State of his claim against it—an assertion the State disputes and the district court found suspect in its exhaustion ruling—Circle Bear did not file suit against the State until about nine months after he received his right-to-sue letter. This is well outside the 90-day period set by 42 U.S.C. § 2000e-5(f)(1).

Circle Bear concedes that his initial service on the District Attorney's Office was not valid service on the State. But he asserts that two statutes, K.S.A. 60-215(c) and K.S.A. 60-203(b), render his amended petition timely. We disagree.

Circle Bear first summarily argues that his amended petition "relates back" to his original petition under K.S.A. 60-215(c). Under K.S.A. 2023 Supp. 60-215(c)(2) and (3), an amended pleading can relate back to an earlier pleading—that is, be treated as though it were filed on the earlier filing date—when

7

"(2) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out, or attempted to be set out, in the original pleading; or

"(3) the amendment changes the party or the naming of the party against whom a claim is asserted, if paragraph (2) is satisfied and if, within the period provided by law for commencing the action against the party, including the period for service of process under K.S.A. 60-203, and amendments thereto, the party to be brought in by amendment:

(A) Received such notice of the action that it will not be prejudiced in defending on the merits; and

(B) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

The State does not dispute that K.S.A. 60-215(c)(2) has been satisfied. But it argues that Circle Bear's amended petition did not meet the requirements of K.S.A. 60-215(c)(3) because he did not allege that the State received notice of the action or should have known that the action would have been brought against it, but for a mistake concerning its identity.

Circle Bear's amended petition does not include any allegations to satisfy K.S.A. 60-215(c)(3), and he has not offered such an explanation during this litigation. In other words, Circle Bear has not demonstrated, either before the district court or on appeal, that the State knew or should have known of the pending lawsuit during the 90 days that K.S.A. 60-203 allows for service of process after his original petition was filed. Nor has he alleged any facts relating to the prejudice, if any, the State would suffer as a result of this lack of notice—an especially glaring omission since the State also was not named in Circle Bear's complaint to the EEOC.

Instead, Circle Bear's arguments are based on conjecture. He asserts that the State must have known about the lawsuit because the District Attorney's Office—a state agency—was served with the original petition and knew about the suit. But Kansas courts have been unwilling to impute notice of claims against the State when the service

8

requirements of K.S.A. 60-304(d)(5) have not been met. See, e.g., *Mondonedo v. Shawnee County District Attorney*, No. 108,934, 2013 WL 2321201, at \*2 (Kan. App. 2013) (unpublished opinion) (Service on an employee of the district attorney's office was not service on the attorney general and thus did not comply with K.S.A. 2012 Supp. 60-304[d][5].). We, like the district court, do not find these summary assertions persuasive.

In apparent recognition that these arguments had thus far been unsuccessful, Circle Bear also argues—for the first time on appeal—that he should be permitted to cure any deficiencies in the service of his original petition under K.S.A. 60-203(b). Under that statute, if service of process "purports to have been made but is later adjudicated to have been invalid due to an irregularity in form or procedure or a defect in making service," the lawsuit is deemed to be commenced at the time of filing if the plaintiff validly serves the defendant within 90 days after that adjudication. K.S.A. 2023 Supp. 60-203(b).

Circle Bear asserts that he cured his invalid service on the District Attorney's Office within 90 days of the district court's finding that it was deficient. He thus argues that under K.S.A. 60-203(b), his amended petition should be considered to have been commenced on the day he filed his original petition, which was within Title VII's 90-day window for filing suit. The State points out that Circle Bear did not present this argument to the district court and argues that K.S.A. 60-203(b) does not apply because Circle Bear originally named and attempted service on the wrong party—defects that cannot be cured through K.S.A. 60-203(b).

We agree with the State on both points. First, because Kansas appellate courts are courts of review, we are loath to consider arguments raised for the first time on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). A party attempting to assert a new argument must explain why that argument warrants consideration without the benefit of a previously developed record or a district court ruling. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert.*

9

*denied* 555 U.S. 1178 (2009); Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). Circle Bear has not made this showing.

Although Circle Bear acknowledged in his reply brief that his arguments regarding K.S.A. 60-203(b) had not been raised in response to the State's motion to dismiss, he offers little explanation for why this argument should be considered for the first time on appeal. He merely asserts that this argument is better viewed as an extension of his assertions that the amended petition related back to the original filing. But whether a previous service defect has been cured under K.S.A. 60-203(b) is a different question employing a different legal standard from whether a claim against a new party can relate back to an earlier filing. The arguments are not interchangeable. In short, Circle Bear has not demonstrated that this argument should be considered for the first time on appeal. See *State v. Godfrey*, 301 Kan. 1041, 1043-44, 350 P.3d 1068 (2015).

And even if we were to consider Circle Bear's argument under K.S.A. 60-203(b), that argument would not be successful. K.S.A. 60-203(b) provides a plaintiff with a grace period "to attempt to effect a valid service of process on the parties initially named in [the] petition" when that original service is later found to be deficient. *Hajda v. University of Kansas Hosp. Auth.*, 51 Kan. App. 2d 761, 771, 356 P.3d 1 (2015), *rev. denied* 303 Kan. 1077 (2016). But that statute does not save an untimely suit when—as here—a plaintiff originally names and serves *the wrong party* and the applicable limitations period runs before the plaintiff properly serves the correct defendant. 51 Kan. App. 2d at 763; see *Cid v. Butler*, No. 123,997, 2022 WL 4115572, at *5-6 (Kan. App. 2022) (unpublished opinion), *rev. denied* 317 Kan. 843 (2023).

In *Hajda*, a plaintiff brought a medical malpractice suit against six individual doctors, a hospital, and a medical center. The plaintiff attempted to serve all eight defendants by serving a single summons on the medical center's office of general counsel—service that was later found defective. But the plaintiff had also erred in suing

10

the hospital and medical center as the defendants because "the correct party should have been the University of Kansas Hospital Authority (KUHA), which is an independent instrumentality of the State." 51 Kan. App. 2d at 768.

The plaintiff's original service was found to be invalid on all then-named defendants. The district court allowed the plaintiff to amend her petition to name KUHA as a defendant, substituting it for the hospital and the medical center. But the court later granted KUHA's motion to dismiss because the statute of limitations had run before the plaintiff had amended her petition to name KUHA as a defendant. The plaintiff appealed, arguing that K.S.A. 2014 Supp. 60-203(b) allowed her to cure her invalid service on KUHA.

This court affirmed the district court's dismissal. We explained that "filing a lawsuit and naming the wrong party is not an irregularity in form or procedure or a defect in making service" under K.S.A. 2014 Supp. 60-203(b). 51 Kan. App. 2d at 763. That statute "cannot be used to extend the time upon which valid service on a party not initially named as a defendant can be obtained." 51 Kan. App. 2d at 763. Thus, the plaintiff could not use K.S.A. 2014 Supp. 60-203(b) to cure her untimely claims against KUHA because KUHA had not been named as a party in the original lawsuit.

The circumstances in *Hajda* are similar to the facts before us. In his original petition, Circle Bear mistakenly named the District Attorney's Office as a defendant, not the State. See K.S.A. 2023 Supp. 60-304(d)(5). Because the State was not named in the original petition, K.S.A. 60-203(b) cannot be used to cure the defective service.

Circle Bear's claims against the State, asserted for the first time in his amended petition, were filed well outside the 90-day window allowed by Title VII. See 42 U.S.C. § 2000e-5(f)(1). Because those claims were not timely filed and thus could not be pursued as a matter of law, we need not consider the district court's alternative ruling that

11

those claims were also precluded because Circle Bear had not included the State in his complaint to the EEOC. The district court did not err when it dismissed Circle Bear's claims against the State under K.S.A. 60-212(b)(6).

2. *The district court did not err in dismissing Circle Bear's claims against the Unified Government because he had been employed by the State, not the county.*

We turn now to the district court's dismissal of Circle Bear's claims against the Unified Government. The district court found that Circle Bear had been a state employee, not a county employee. Circle Bear asserts that he should be considered a joint employee of both entities.

In order for someone to state a claim for employment discrimination under Title VII, a plaintiff must show that the defendant was their employer. *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014). Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b). A person includes "individuals, governments, governmental agencies, [and] political subdivisions." 42 U.S.C. § 2000e(a). And Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f).

While these definitions provide little clarity standing alone, federal courts often turn to the common law of agency to provide further clarification. *Felder v. United States Tennis Association*, 27 F.4th 834, 843 (2d Cir. 2022). The common law has developed several tests that apply, depending on the situation, to determine whether an entity was a plaintiff's employer under Title VII. *Knitter*, 758 F.3d at 1226-27. These tests all try to answer the same question: "'who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim.'" *Peppers v. Cobb County, Georgia*, 835 F.3d 1289, 1297 (11th Cir. 2016).

When courts face a situation where the plaintiff worked as an employee and there is no dispute that the defendants do not constitute a single employer—as is the case here—courts apply the "'joint-employer test.'" *Knitter*, 758 F.3d at 1227. Under this test, courts will consider two entities to be joint employers if they "'share or co-determine'" the "'essential terms and conditions of employment.'" 758 F.3d at 1226. The most important factor in this test is the authority to fire the employee. 758 F.3d at 1226. Other factors include whether both entities could promulgate work rules and assignments, set conditions of employment, control day-to-day supervision of employees, and control the employee's records. 758 F.3d at 1226.

The Unified Government argues that it cannot be considered Circle Bear's employer because Kansas law establishes that an employee in a district attorney's office is a state employee, not a county employee. Indeed, K.S.A. 25-2505(b) indicates that a district attorney is a "state officer." And K.S.A. 22a-101(a) provides that "in no event shall said district attorney be deemed an officer of any county."

When "'a state legislative body creates a public entity and declares it to be separate and distinct'" from another, federal law grants that declaration "'a significant degree of deference, amounting to a presumption that the public entity is indeed separate and distinct for purposes of Title VII.'" *Peppers*, 835 F.3d at 1298. This presumption "is rooted in comity, federalism, and respect for a state's abilities to create and define its own institutions." 835 F.3d at 1298-99; see *Gregory v. Ashcroft*, 501 U.S. 452, 470, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991) (federal law, when ambiguous, should be interpreted in a manner to avoid intrusion on state government functions).

Several federal courts have abided by the Kansas Legislature's decision to treat a district attorney's office as a separate and distinct entity from the county. See *Allen v. Kline*, 507 F. Supp. 2d 1150, 1162 (D. Kan. 2007) (district attorney is not bound by a

13

county's personnel policies and procedures); *Boxum-Debolt v. Office of Dist. Attorney*, No. 12-2641-KHV, 2013 WL 5466915, at \*2, 8 (D. Kan. 2013) (unpublished opinion). In *Boxum-Debolt*, the court held that employees in a district attorney's office could not maintain Title VII claims against the county, even under a joint-employer theory. 2013 WL 5466915, at \*8. In so holding, the court emphasized that the county "did not have authority to terminate plaintiffs' employment," meaning that the plaintiffs' claims against the county must be dismissed. 2013 WL 5466915, at \*8.

We find the analysis of these federal courts persuasive. While Circle Bear alleges that both the District Attorney's Office and the Unified Government shared the authority to fire him in certain circumstances and regulated various aspects of his employment—consistent with the factors in the joint-employer test—these assertions are foreclosed by both Kansas statute and federal caselaw establishing otherwise. And we find Circle Bear's remaining arguments unconvincing.

We agree with the district court that the Unified Government cannot be Circle Bear's joint employer as a matter of law. We thus likewise affirm the district court's dismissal of Circle Bear's Title VII claims against the Unified Government.

Affirmed.